[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 298.]

HOOD, APPELLANT, *v*. DIAMOND PRODUCTS, INC. ET AL., APPELLEES.

[Cite as *Hood v. Diamond Products, Inc*., 1996-Ohio-259.]

*Employment relations—Termination of employment—Requirements to establish a prima facie case of handicap discrimination—Cancer may be a "handicap" as that term is defined in former R.C. 4112.01(A)(13).*

1.  In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. (*Hazlett v. Martin Chevrolet, Inc*. [1986], 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, followed.)

2.  Cancer may be a "handicap" as that term is defined in former R.C. 4112.01(A)(13).

(No. 94-1217—Submitted September 26, 1995—Decided January 17, 1996.)

APPEAL from the Court of Appeals for Lorain County, No. 93CA005649.

————————————

{¶ 1} In 1988, appellant, Christine S. Hood, was hired as a sales secretary by Diamond Products, Inc. ("Diamond"), appellee. Appellant was eventually given the title of executive secretary. She performed all facets of secretarial duties for various company personnel, including, among others, Karl H. Moller, Diamond's chief executive officer and president, James N. Warren, the company's sales and marketing manager, and Thomas C. Ferrara, a former marketing director at Diamond. Appellant was fired from her employment with Diamond effective December 9, 1991.

{¶ 2} On June 3, 1992, appellant filed a complaint in the Court of Common Pleas of Lorain County against appellees, Diamond and TDP Joint Venture. In her complaint, appellant alleged, *inter alia*, that appellees fired her without just cause and discriminated against her in violation of R.C. 4112.02(A). Appellant claimed that during her employment with Diamond she was diagnosed with and was treated for cancer of the bladder, that she was fired because of the cancer, and that her condition was a "handicap" as that term is defined in former R.C. 4112.01(A)(13).

{¶ 3} The following relevant matters were elicited upon discovery and by way of sworn affidavit.

{¶ 4} Appellant testified, by way of affidavit and deposition, that in October 1989, she observed blood in her urine and, following a biopsy and the removal of two tumors, she was diagnosed with bladder cancer. According to appellant, she informed Warren about the results of the biopsy and she informed both Warren and Moller that she would need to take time off from work for surgery. Following the surgery, appellant was told by her doctors that the cancer had been eradicated with the initial removal of the two tumors. However, in March 1990, the cancer reappeared, necessitating chemotherapy treatments. Appellant stated that she informed Warren and Moller of her status and the need for chemotherapy treatments.

{¶ 5} Appellant indicated that she had undergone numerous chemotherapy treatments. The individual treatments lasted a few hours and could only be administered during weekday business hours. As a result, appellant was required to be absent, at various times, from work. Appellant indicated that she usually made up the time she missed from work and that she scheduled and/or rescheduled treatments for Friday afternoons in order to minimize interfering with work. Appellant also explained that the third series of chemotherapy treatments she received caused her extreme pain, that they affected her sleep, and that on the day

immediately following the treatments it was necessary "to visit the bathroom every fifteen or twenty minutes."

{¶ 6} During her deposition, appellant testified that as a consequence of her cancer, she was asked to keep a log of the hours she worked and that her supervisor, Warren, began to abuse her "verbally." Additionally, appellant indicated that her June 1991 job evaluation review was downgraded unjustifiably by Warren. According to appellant, when she approached and questioned Warren about certain low scores she had received on the review, Warren would not discuss the matter with her. Appellant also testified that on one occasion when she had rescheduled a chemotherapy treatment from a Friday to a Monday so that she could visit her ailing mother during a Thanksgiving Day holiday, she was told by Warren that "Well, then what you're telling me is that last week, your mother was more important than your health, but this week, your health is more important than your job."

{¶ 7} The record also contains the depositions of Ferrara, Moller and Warren. Ferrara testified that he and Warren had discussed appellant's condition (cancer and chemotherapy treatments). Ferrara stated that Warren was aware that appellant had cancer and that he (Warren) was extremely "agitated relative to her absenteeism and tardiness * * *." Ferrara stated that appellant was overworked, that she was a competent and good secretary, and that she routinely worked extra hours to compensate for the time that she had missed from work due to the cancer.

{¶ 8} Moller and Warren testified that they were not aware that appellant had cancer. However, Warren did indicate that he was aware that appellant had received chemotherapy treatments. According to Moller and Warren, they believed that appellant's absences from work were due to "female problems." Warren testified that appellant was a good secretary and that she made up time lost from work.

{¶ 9} At their depositions, Moller and Warren claimed that the reason appellant was fired was because of her dishonesty surrounding the compilation of

a "Christmas list" consisting of company employee addresses. According to Moller, appellant had falsely used his name as authorization for compiling the addresses and when questioned about the incident appellant denied using his (Moller's) name.

{¶ 10} On March 31, 1993, appellees filed a motion for summary judgment. In their brief, appellees asserted, essentially, that appellant failed to establish a prima facie case of handicap discrimination, and that appellant failed to show that the reason for her discharge was a pretext for unlawful discrimination.

{¶ 11} Appellant responded to the motion for summary judgment and attached, among other things, her personal affidavit and portions of her deposition testimony. In her affidavit, appellant set forth the nature and extent of her alleged handicap.

{¶ 12} On May 26, 1993, the trial court granted summary judgment in favor of appellees. The trial court, however, did not provide a specific basis for its decision.

{¶ 13} On appeal, the court of appeals affirmed the judgment of the trial court. The court of appeals held that appellant failed to establish that appellees had violated R.C. 4112.02(A). Specifically, the court of appeals held that, because appellant did not provide expert medical testimony outlining the nature and effect of her condition, appellant failed to demonstrate that she was handicapped.

{¶ 14} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Spangenberg, Shibley, Traci, Lancione & Liber*, *Ellen Simon Sacks* and *Michael T. Pearson*, for appellant.

*Seeley, Savidge & Aussem Co., L.P.A., Carter R. Dodge* and *Keith A. Savidge*, for appellees.

4

*Louis A. Jacobs; Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes*, urging reversal for *amicus curiae*, Ohio Employment Lawyers Association.

*Vorys, Sater, Seymour & Pease*, *G. Ross Bridgman*, *Robert A. Minor* and *Richard T. Miller*, urging affirmance for *amici curiae*, Ohio Manufacturers' Association and Ohio Chamber of Commerce.

_____

**DOUGLAS, J.**

{¶ 15} The primary issue before this court is whether the court of appeals properly concluded that summary judgment in favor of appellees was appropriate. For the reasons that follow, we answer this question in the negative and, accordingly, reverse the judgment of the court of appeals.

{¶ 16} Handicap discrimination in employment situations is prohibited by R.C. 4112.02(A).[1] This statutory[2] provision provides that:

"It shall be an unlawful discriminatory practice:

---

1. R.C. 4112.01 and 4112.02 have an interesting legislative history. The General Assembly amended both sections with an effective date of May 31, 1990. 143 Ohio Laws, Part III, 4154. As part of the amendment to R.C. 4112.02, the General Assembly, at the conclusion of the text, said that "[t]his is an interim section effective only until January 1, 1994." *Id.* at 4162. At the same time as the 1990 amendments were adopted, the General Assembly *also* passed a second new version of R.C. 4112.02, to be effective January 1, 1994. *Id.* at 4162-4168.

But before the 1994 date was reached, the General Assembly then passed new versions of R.C. 4112.01 and 4112.02, with an effective date of June 30, 1992. 144 Ohio Laws, Part III, 4743. As part of this legislation, the General Assembly repealed the version of R.C. 4112.02 which was to have taken effect on January 1, 1994. *Id.* at 4782.

Thus, the law in effect today, as regards R.C. 4112.01 and 4112.02, is the version of the law enacted effective June 30, 1992. However, the law we deal with in the case at bar is the version of both R.C. 4112.01 and 4112.02 effective May 31, 1990, since the discrimination alleged occurred on December 9, 1991 — *i.e.,* before the revised statute (effective June 30, 1992) which is now in effect.

For any case of an alleged unlawful discriminatory practice involving handicaps, alcohol and/or drugs occurring after June 30, 1992, interested persons are cautioned to review the current version of R.C. 4112.01 and 4112.02 and, specifically, R.C. 4112.01(A)(13) and 4112.02(Q).

2. Section (*A*) of R.C. 4112.02 has not been changed. The language is the same in the 1990 version of the legislation, the 1994 proposed version (repealed by the General Assembly in 1992) and the current 1992 version. See 143 Ohio Laws, Part III, 4156, 4162; 144 Ohio Laws, Part III, 4756.

"(A) For any employer, because of the race, color, religion, sex, national origin, *handicap*, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." (Emphasis added.)

{¶ 17} This court has held that in order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. *Hazlett v. Martin Chevrolet, Inc*. (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333, 496 N.E.2d 478, 480. Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm*. (1981), 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 203, 421 N.E.2d 128, 132. Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to, insubordination on the part of the employee claiming discrimination, or the inability of the employee or prospective employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question. See, *e.g*., Ohio Adm.Code 4112-5-08(D)(4) and (E). Finally, if the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. *Plumbers & Steamfitters Joint Apprenticeship Commt*., *supra*, 66 Ohio St.2d at 198, 20 O.O.3d at 203, 421 N.E.2d at 132.

{¶ 18} The case we now have before us concerns only whether appellant was "handicapped"—the first element of a prima facie case of handicap

6

discrimination.   The version of R.C. 4112.01(A)(13), in effect at the time appellant's employment was terminated by her employer, provided that:

"(13) 'Handicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped." 143 Ohio Laws, Part III, 4156.

{¶ 19} In *Hazlett*, *supra*, this court reviewed former R.C. 4112.01(A)(13) and held that alcohol and drug addiction are, pursuant to the statute, handicaps. *Id.* at syllabus.  See, also, *Babcock & Wilcox Co. v. Ohio Civ. Rights Comm*. (1987), 31 Ohio St.3d 222, 31 OBR 430, 510 N.E.2d 368.[3]  In *Hazlett*, this court recognized that drug addiction can create a debilitating chemical imbalance that is an abnormal physical condition, that such an addiction may limit the user's functional ability, and that the effects of the drug can remain in the body for a considerable period of time.  *Id*., 25 Ohio St.3d at 280, 25 OBR at 332, 496 N.E.2d at 479.  Recognizing this, we also find that cancer *may* be a "handicap" as that term is defined in former R.C. 4112.01(A)(13).  Obviously, however, given the requirements of the statute and the fact that many types and forms of the disease exist, the determination whether cancer is a handicap should be made on a case-by-case basis.  In reaching this conclusion, we do not wish to imply that cancer is not a serious condition.

3. For the continued efficacy of *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, and *Babcock & Wilcox Co. v. Ohio Civ. Rights Comm.* (1987), 31 Ohio St.3d 222, 31 OBR 430, 510 N.E.2d 368, see fn. 1, *supra*.

Indeed, many individuals have been afflicted by and suffer from this dreadful disease. However, there may be instances where cancer is not so pernicious in its effect to warrant a finding that the person who is afflicted with the disease is "handicapped" as that term is defined in former R.C. 4112.01(A)(13).[4] In this regard, we reject appellant's contention that cancer should be classified, in all cases, as a *per se* handicap.

**{¶ 20}** Having determined that cancer may be a handicap, we next consider whether the court of appeals in the case at bar erred in finding that appellant's testimony in support of her motion for summary judgment was insufficient to establish "that she suffered a covered condition and was within the class to be protected." In particular, the court determined that appellant's affidavit was "self-serving" testimony and hearsay, and that expert medical testimony was necessary to demonstrate that she suffered from her alleged handicap. We disagree. While the better practice in this type of situation would have been to submit expert medical testimony, we do not believe that under the circumstances of this particular case such testimony was required.

**{¶ 21}** Civ.R. 56 sets forth the requirements that must be applied in determining whether appellees are entitled to summary judgment. Hence, to meet the requirements of Civ.R. 56(C), it must be demonstrated that: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65-66, 609 N.E.2d 144, 145, citing *Temple v. Wean*

---

4. In the 1992 version of R.C. 4112.01 (the current version), subsection (16)(a)(iii) specifically lists cancer as a "physical or mental impairment."

*United, Inc*. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Furthermore, "[b]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution. Doubts must be resolved in favor of the nonmoving party." *Davis*, *supra*, 66 Ohio St.3d at 66, 609 N.E.2d at 145, citing *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138, 140.

{¶ 22} The evidence in the record, construed in appellant's favor as required by Civ.R. 56, supports a finding that appellant's ailment was an abnormal, diagnosable, long-term condition, and that her condition caused functional limitations resulting in significantly increased hardship and vulnerability to everyday obstacles and hazards. Specifically, appellant testified that she had been diagnosed with bladder cancer (which is now not seriously contested by appellees) and that she had, by necessity, undergone numerous chemotherapy treatments over an extended period of time. The record also reveals that Diamond was aware that appellant had received chemotherapy treatments. Additionally, appellant also explained how her illness had required hospitalization and that the treatments she received in attempting to combat the disease adversely affected her everyday living and working environment. Such testimony was clearly within the personal knowledge of appellant. See Civ.R. 56(E)[5] and Evid.R. 602.[6] Thus, applying the standards of Civ.R. 56, we find that questions whether appellant was "handicapped"

---

5. Civ.R. 56(E) provides, in part, that:

"Supporting and opposing affidavits shall be shall be made on *personal knowledge*, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphasis added.)

6. Evid.R. 602 states, in part, that:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."

pursuant to former R.C. 4112.01(A)(13), for purposes of summary judgment, must be resolved in appellant's favor.

{¶ 23} Accordingly, we hold that summary judgment was improperly granted in favor of appellees. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 24} I respectfully dissent. Although the syllabus law in this case is unassailable, given our summary judgment standard, I agree with the court of appeals and would affirm the summary judgment in favor of Diamond Products.

{¶ 25} Diamond Products moved for summary judgment on the basis that Hood could not prove that her cancer was a handicap under former R.C. 4112.01(A)(13). Specifically, Diamond Products contended that Hood could not prove that her cancer clearly limited her "functional abilities" or that her cancer affected her ability to perform her "everyday routine living and working without significantly increased hardship." Diamond Products' motion for summary judgment forced Hood "to produce evidence on any issue for which [Hood would bear] the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

{¶ 26} The issue in this case is simply whether Hood's deposition and affidavit were competent evidence to raise an issue of material fact that Hood's cancer limited her "functional ability * * * [to] perform [her] everyday routine living and working without significantly increased hardship and vulnerability to

what are considered the everyday obstacles and hazards encountered by the nonhandicapped." Former R.C. 4112.01(A)(13). (143 Ohio Laws, Part III, 4156.) The statutory definition requires such evidence to relate to "a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time" and "which can reasonably be expected to limit the person's functional ability." Hood's testimony on those issues was dependent upon the medical diagnosis and opinion of medical experts.

{¶ 27} While Hood had personal knowledge of her adverse reactions to chemotherapy, her statements concerning the continuation of her cancer and the expectation of the limits of her functional abilities were not based on her firsthand knowledge. Thus, Hood's evidence as to those issues was not competent under Civ.R. 56(E). Hood, therefore, did not sustain her burden of demonstrating that a dispute on a genuine issue of material fact existed. In my view, the trial court properly granted summary judgment in favor of Diamond Products.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

_____