**Barbara BENNETT, Plaintiff,**

v.

**UNIVERSITY HOSPITALS OF CLEVELAND, Defendant.**

**No. 1:96 CV 1320.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 24, 1997.

Alan S. Belkin, Law Offices of Alan S. Belkin, Cleveland, OH, for Plaintiff.

Dennis N. LoConti, Sr., Scott H. Schooler, Helen M. Forbes, Forbes, Forbes & Associates, Cleveland, OH, for Defendant.

### MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon the Motion for Summary Judgment (Document # 21) filed by Defendant University Hospitals of Cleveland (hereinafter UHC). For the reasons that follow, Defendant's Motion is GRANTED.

### Factual Background

The following facts are derived from Plaintiff Barbara Bennett's deposition testimony and the exhibits used throughout her testimony: Ms. Bennett began working full-time for UHC in 1964 or 1965. UHC hired her as a phlebotomist which entailed drawing blood from patients. About five years later, she began working as a laboratory technologist in the Department of Hematology. During her long tenure as a lab technologist, the departmental organization of the hospital changed and the arrival of technology altered many of the procedures. Nevertheless, her basic responsibilities remained constant, i.e. testing patients' blood and urine samples and reporting the results of her tests to be recorded on patients' charts. These tests are critical to diagnosis and treatment of patients and if inaccurate could prove dangerous to the patients.

At various times throughout her career at UHC, Ms. Bennett received formal reprimands. These reprimands were written up on hospital forms entitled "Corrective Action" and contained details of the charged violation of procedures or other shortcomings in performance.

Beginning in 1980 and continuing through to her termination in 1995, Ms. Bennett received numerous corrective action reports variously labeled "Confirmation of Counseling" or "Warning." In July 1994, Ms. Bennett received corrective action for inaccurate test results and the form was labeled "Suspension or Final Warning." In October 1994, she again received a corrective action form labeled "Suspension or Final Warning" for inaccurate test results. On this occasion, her supervisor noted that her performance would normally have led to termination but she decided to repeat the final warning stage and provide additional coaching in recognition of her long service to UHC. Finally, in December 1994, Ms. Bennett received another corrective action form for inaccurate test results. This last episode led to her termination in January, 1995.

### Procedural History

Ms. Bennett filed a Complaint against UHC on June 18, 1996, alleging that UHC discriminated against her in violation of both the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (hereinafter ADA) and Ohio Revised Code § 4112.99. In its Answer, UHC denied the allegations of discrimination contained in the Complaint.

Following discovery, UHC filed a Motion for Summary Judgment pursuant to the pretrial schedule established by the Court, but Ms. Bennett failed to respond to UHC's Mo-

tion within the requisite time period. Nevertheless, the Court granted Ms. Bennett an extension of time to file a response until September 5, 1997. No such response was filed. Instead, on September 5, 1997, Plaintiff filed another Motion to Extend Time until September 12, 1997, no such response was filed by September 12, 1997 as requested, therefore, the Court denied this request on September 22, 1997.[1] Thus, Plaintiff's Motion for Summary Judgment is before the Court unopposed.

### Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511–12 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

---

1. It should be noted that Plaintiff made no attempt to file a late brief on September 12, 1997, the extension date previously requested. The

Court had received no correspondence from the Plaintiff at the time the Motion to Extend Time was denied on September 22, 1997.

■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). FED.R.CIV.P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## Discussion

In her Complaint, Ms. Bennett alleges that she is a qualified person with a handicap and that UHC wrongfully terminated her because of her disability. Through her deposition testimony, Ms. Bennett revealed that her claimed disability consists of occasional blackouts which are controlled by prescribed medication.

■ The ADA prohibits employers from discriminating against qualified individuals with a disability, because of their disability, in regard to any of the terms and conditions of employment. 42 U.S.C. § 12112(a). As the Sixth Circuit recently explained in *Gilday v. Mecosta County*, 124 F.3d 760 (6th Cir.1997):

> A person seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability. (quoting *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997)).

The elements of proof are similar under Ohio law as well:

> In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. (*Hazlett v. Martin Chevrolet, Inc.* [1986], 25 Ohio

St.3d 279, 25 OBR 331, 496 N.E.2d 478, followed.)

*Hood v. Diamond Products, Inc.,* 74 Ohio St.3d 298, 658 N.E.2d 738 (1996), paragraph one of the syllabus. Accordingly, because the essential evidence necessary to prove a claim of discrimination under both federal and Ohio law is the same, Plaintiff's claims under the ADA and Ohio law will be considered together.

In its Motion for Summary Judgment, UHC argues that Ms. Bennett cannot maintain her ADA claim against UHC under either federal or Ohio law for several reasons. UHC argues that 1) Ms. Bennett was not qualified for her position; 2) she provided no notice and UHC had no notice of her alleged disability; 3) her alleged disability has not resulted in a substantial impairment of a major life activity; 4) she never requested a reasonable accommodation; and, 5) she never provided an expert report to support her assertion that she was suffering from a disability. In support of its Motion, UHC provided copies of Plaintiff's corrective action reports and performance appraisals. All of these reports were either identified by the Plaintiff in her deposition testimony or she admitted that she had no evidence to refute them.

The aforementioned evidence demonstrates that Ms. Bennett repeatedly received reprimands for inaccurate test results, and thus reveals that she was not qualified for her position since she did not perform the essential functions of her job. As these test results potentially risked the lives of UHC patients, and Ms. Bennett has provided no evidence to show that the corrective action resulted from her alleged disability, UHC was within in its rights to terminate her from her employment.

The Plaintiff's own deposition testimony also revealed that she did not give formal notice to UHC that she allegedly suffered from a disability nor did she request a reasonable accommodation for her alleged disability. In addition, Ms. Bennett's alleged disability may not even qualify as a disability under the ADA, because the major life activity she believes is limited is the fact that she takes three pills per day. 42 U.S.C. § 12102(2). Finally, Ms. Bennett admitted in her deposition testimony that her alleged medical conditions are not related to her job performance, thus demonstrating that the errors for which she repeatedly received corrective action did not relate to her claimed disability.

Therefore, a thorough review of Defendant UHC's Motion for Summary Judgment and the evidence offered in support thereof reveals that no material issues of fact remain to be litigated in this matter and UHC is entitled to judgment as a matter of law. Upon such a showing by a movant, and pursuant to Fed.R.Civ.P. 56(e), the nonmoving party is not entitled to rely on the allegations of her pleadings, but must set forth specific evidence showing a genuine issue for trial. As Plaintiff has failed to meet this burden, Defendant is entitled to judgment as a matter of law. Accordingly, UHC's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Pursuant to a Memorandum of Opinion and Order of this Court, Defendant's Motion for Summary Judgment (Document # 21) is GRANTED and this case is DISMISSED WITH PREJUDICE. All costs to the Plaintiff.

IT IS SO ORDERED.