[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION.
 BACKGROUND
Plaintiff-appellant, Beverly Pinkerton, appeals from the judgment of the Hamilton County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee Coca-Cola Enterprises, Inc. Because the evidentiary material upon which Coca-Cola relied in support of its motion demonstrates that genuine issues of material fact remain to be litigated, we reverse that judgment.[1] We have removed this case from the accelerated calendar.
The record demonstrates that Pinkerton began working part-time for Coca-Cola's predecessor, Johnson Coca-Cola Bottling Group, Inc., in 1981. The two companies merged, and, by 1983, Pinkerton was working full-time in the telemarketing department. In August 1987, Pinkerton was injured on the job, and she remained off work receiving workers' compensation benefits. Pinkerton contends that she currently suffers from reflex sympathy dystrophy.
In December 1987, Pinkerton filed a sexual-harassment claim against Coca-Cola with the Ohio Civil Rights Commission based upon the conduct of two co-workers. In April 1988, Pinkerton and Coca-Cola entered into a written settlement of that claim. The "Negotiated Settlement Agreement," signed by Pinkerton, Coca-Cola, the Equal Employment Opportunity Commission's area director and the Ohio Civil Rights Commission's regional director, provided in part:
 In exchange for the promises of the person claiming to be aggrieved [Pinkerton] and the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission contained in this agreement, the Respondent [Coca-Cola] agrees to give [Pinkerton] backpay in the amount of $1,832.00. [Coca-Cola] further agrees to give [Pinkerton] an Account Manager's position * * * immediately, if [Pinkerton] can be fully released to return to work. If [Pinkerton] cannot be fully released to return to work at this time, upon her full medical release, [Coca-Cola] agrees to give [Pinkerton] a position as a Cold Drink Representative * * * or an Account Manager's position * * * whichever position becomes available first. * * * [Coca-Cola] further agrees to treat [Pinkerton] as all other employees are treated and will enforce any and all policies relating to sexual harassment. [Emphasis added.]
 Coca-Cola had a written policy concerning long-term disability that limited a leave of absence from work for medical reasons to one year. As will be discussed infra, Coca-Cola relied upon this policy to terminate Pinkerton in 1992.
According to the evidentiary material attached to Coca-Cola's motion for summary judgment, the company required Pinkerton to be examined by a company doctor in 1988. That physician opined that Pinkerton could return to work in a telemarketing position on a part-time basis. Pinkerton testified that she could not tell this doctor that she was supposed to be promoted because the negotiated settlement agreement prohibited her from divulging the terms of the settlement. Coca-Cola's human-resources director at that time told Pinkerton to remain on medical leave until she was pain-free for one month.
Pinkerton further testified that between 1988 and 1993 she attempted to contact personnel in Coca-Cola's human-resources department to discuss her status, but no one would speak to her. At one time during this period, Pinkerton sat in Coca-Cola's waiting room all day, for three consecutive days, in anticipation of an appointment to discuss her situation, but no one would speak with her. She testified that she also sent letters to Coca-Cola requesting an appointment, but that the letters went unanswered.
In December 1992, Coca-Cola's new director of human resources notified Pinkerton by letter that she was being terminated for exceeding Coca-Cola's one-year medical-leave policy. Until that time, Coca-Cola had continued to carry her on its books as an employee. While Pinkerton did not receive wages, she did receive health insurance through Coca-Cola.
In June 1993, Pinkerton wrote to Coca-Cola and requested to be returned to work. Accompanying the request was a letter from Pinkerton's chiropractor releasing her to return to work without restrictions. Coca-Cola, however, refused to allow Pinkerton to return to work, claiming that she had been terminated from employment for violating the company's one-year limit for medical leave.
Pinkerton initiated an action against Coca-Cola in May 1994. On May 1, 1996, Pinkerton filed an amended complaint against Coca-Cola in which she alleged, in count one, that Coca-Cola had breached the settlement agreement. In count two of the complaint, Pinkerton alleged that Coca-Cola had discriminated against her because of her disability, which resulted from the 1987 work-related accident.
Coca-Cola filed a motion for summary judgment, which the trial court granted. From that judgment, Pinkerton brings this timely appeal in which she urges, in a solitary assignment of error, that the lower court erred by granting Coca-Cola's motion for summary judgment. We find the assignment to be persuasive.
 SUMMARY-JUDGMENT STANDARD
This court reviews the grant of summary judgment de novo. In ruling on a motion for summary judgment, the court must construe the evidence most favorably to the non-moving party (or parties), in this case the plaintiff. See Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274. See, also,Miller v. Bike Ath. Co. (1998), 80 Ohio St.3d 607,687 N.E.2d 735. For Coca-Cola to prevail on its motion for summary judgment, it has the initial burden to show that (1) no genuine issue as to any material fact remains to be litigated; (2) it is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the plaintiff, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the plaintiff. Civ.R. 56(C); Temple,supra, at 327, 364 N.E.2d at 274.
 PINKERTON'S CLAIM FOR BREACH OF CONTRACT
As set forth above, Pinkerton and Coca-Cola entered into a written agreement settling her sexual-harassment claim. That agreement provided, inter alia, that "[if] [Pinkerton] cannot be fully released to return to work at this time, upon her full medical release, [Coca-Cola] agrees to give [Pinkerton] a position as a Cold Drink Representative * * * or an Account Manager's position * * * whichever position becomes available first."
There is no mention of any time limit for fulfilling this agreement. By its terms, the agreement required Coca-Cola to give Pinkerton a position as a representative or a manager whenever she was fully released to return to work. She was fully released by her doctor in 1993, and the agreement required Coca-Cola to give her a position.
Coca-Cola also contends, however, that the settlement agreement, like any contract, had to be performed within a reasonable time, and that, in this case, Pinkerton waited too long. Whether Coca-Cola would be entitled to summary judgment when the reasonableness of the timing of Pinkerton's return to work is at issue is questionable at best. However, other evidence in the material submitted by Coca-Cola demonstrates that a genuine issue of material fact exists regarding the effect of the passage of time on Coca-Cola's obligation to return Pinkerton to work following her medical release.
First is the agreement itself. Contrary to Coca-Cola's assertion, there is no evidence to support its contention that the agreement contemplated that Pinkerton would return to work "quickly." The agreement specifically provided for the possibility that Pinkerton would not be back quickly: that is, when the agreement was signed, it was contemplated that she could not return to work "at this time." The agreement stated that if she could not return at that time, she would be returned to a position whenever she was fully released to work.
Also, Pinkerton testified that she was told not to report to work until she had been pain-free for one month. She further testified that, on a number of occasions between 1988 and 1992, she attempted to contact Coca-Cola regarding her status. Coca-Cola cannot both refuse contact with Pinkerton and at the same time claim that she delayed too long in requesting to return to work.
Coca-Cola argues, however, that because the settlement agreement also contains a provision that states that Coca-Cola will treat Pinkerton as it treats all other employees, it was at liberty to terminate her employment for any reason that it could terminate another employee. Thus, when her medical leave extended beyond one year, Coca-Cola terminated her employment as stated in its medical-leave policy. However, the evidence, construed in the light most favorable to Pinkerton, suggests that the clause in the settlement agreement is simply an anti-retaliation provision for the settlement of her claims and provides no support for Coca-Cola's position that Coca-Cola and Pinkerton agreed that she would still be subject to all generally applicable employment policies, even if those policies contradicted the terms of the settlement.
Coca-Cola's argument that it merely enforced its one-year leave policy as it would have for any other employer is not supported by the evidence. Coca-Cola knew at the time it signed the agreement that Pinkerton was injured and off work, yet it made no mention of a need for her to return to work within one year of the start of her leave, which, at the time of the settlement, would have been only four months later. The agreement allowed her to return whenever she was fully released to work.
Since the agreement was ratified so close to the time that Pinkerton would have otherwise been required to return to work under the general one-year policy, the specific provisions of the settlement agreement, construed in the light most favorable to Pinkerton, could reasonably be interpreted to override the generally applicable leave policy. Also, Coca-Cola did not notify her that she was going to be terminated in 1989, which would have been one year after the agreement and two years after she was on leave. Coca-Cola waited until 1992, five years after her leave began, to terminate Pinkerton's employment — without warning. Genuine issues of fact exist as to whether Coca-Cola had the right to terminate Pinkerton for remaining on medical leave for more than one year and, even if it did, whether Pinkerton's termination was effected in accordance with Coca-Cola's policy.
For the foregoing reasons, we hold that genuine issues of material fact remain as to whether Coca-Cola breached the settlement agreement when it terminated Pinkerton's employment and refused to return her to work when she was fully released by her doctor to do so.
 PINKERTON'S CLAIM FOR DISABILITY DISCRIMINATION
We also hold that genuine issues of material fact exist as to whether Coca-Cola discriminated against Pinkerton because she was disabled. To establish a prima facie case of disability discrimination, Pinkerton was required to show that (1) she was disabled, had a history of being disabled, or was regarded as disabled (see Ohio Adm. Code 4112-5-02[H]), (2) that she was able to perform the essential functions of her job, with or without accommodation, (3) that her employer took an adverse action against her, and (4) that a causal connection existed between the adverse action and her disability. See Hood v. DiamondProducts, Inc. (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus.
For the purposes of disability discrimination, a "disability" is defined as a physical or mental condition that substantially limits one in a major life activity. R.C. 4112.01(A)(13). Major life activities include walking, breathing, caring for oneself, seeing, hearing and working. Id.
While Pinkerton admits that she did not communicate to Coca-Cola that she suffered from reflex sympathy dystrophy, Coca-Cola was aware that Pinkerton had suffered a work-related injury that resulted in physical limitations and, at the time the settlement agreement was consummated, had already kept her off work for approximately eight months. Evidence supports Pinkerton's contention that Coca-Cola considered her substantially limited in her ability to work, since Coca-Cola required an examination by a company doctor to determine her fitness to work and informed her not to return to work until she had been pain-free for a month.
The materials submitted by Coca-Cola in support of its motion for summary judgment demonstrate that Pinkerton had a physical condition that Coca-Cola perceived to be substantially limiting in her ability to work. Thus, a genuine issue of fact exists as to whether Pinkerton was disabled within the meaning of R.C. 4112.02.
Coca-Cola argues that, even if Pinkerton was disabled, she was unable to perform the essential functions of her job and therefore has no protection under the disability-discrimination laws. We hold that a genuine issue of fact exists regarding Pinkerton's ability to perform the essential functions of her job, either with or without a reasonable accommodation.
Coca-Cola attempts to discredit the evidence that Pinkerton was capable of performing the essential functions of the positions she was supposed to hold in 1993, when she was fully released to return to work, by arguing that Pinkerton had been terminated already, and that no evidence exists that she was capable of performing either of the jobs she was promised prior to that date.
First, we have already held that, with the evidence construed in the light most favorable to Pinkerton, genuine issues of fact exist regarding the application of Coca-Cola's leave policy in Pinkerton's case. Thus, the fact that she was fully released to work in 1993, when she requested to be put in one of the positions she had been guaranteed in the settlement agreement, creates a genuine issue of fact regarding her ability to fully perform the essential functions of the positions.
Coca-Cola also informed Pinkerton that she was not to return to work until she was pain-free for one month. Coca-Cola presented no evidence that Pinkerton's condition between 1989 and 1993 was such that she would have been unable to perform the essential functions of the positions with an accommodation. Instead, Coca-Cola required Pinkerton to be able to work without any accommodation before she could come back to work. Coca-Cola has failed to meet its burden of demonstrating that no genuine issue of fact exists regarding Pinkerton's ability to perform the essential functions of the positions with or without an accommodation. Particularly in light of Pinkerton's testimony that she attempted, unsuccessfully, on many occasions to contact persons at Coca-Cola to discuss her condition, we hold that a genuine issue exists as to whether Pinkerton could perform the essential functions of either of the jobs.
Pinkerton has also established an adverse employment action: Coca-Cola's refusal to put her in one of the positions listed in the settlement agreement. Coca-Cola attempts to justify its refusal by stating that she had been terminated pursuant to a non-discriminatory policy relating to medical leave. We have already held that genuine issues of fact exist as to the animus behind Pinkerton's termination as well as the propriety of the termination in light of the settlement agreement's terms. A genuine issue of fact exists as to whether Pinkerton suffered an adverse action.
Finally, as to the causation issue, we hold again that genuine issues of fact exist. Coca-Cola argues that it did not place Pinkerton in either of the positions listed in the settlement agreement because (1) she had waited too long to enforce the agreement, and (2) she had been terminated months earlier for violation of its medical-leave policy. We have already held that genuine issues of fact exist as to whether the duration of Pinkerton's leave rendered the settlement agreement void.
We have also held that genuine issues of fact exist as to whether the medical-leave policy could be enforced against Pinkerton and whether the leave policy was the true reason for Pinkerton's termination. Moreover, the termination was based at least in part on the fact that Pinkerton was substantially limited in her ability to work, which is a major life function. Therefore, we hold that genuine issues of material fact exist as to whether the adverse action suffered by Pinkerton was causally related to her (perceived) disability.
Therefore, the judgment of the trial court is reversed. We remand this cause for further proceedings consistent with this decision and law.
Judgment reversed and cause remanded.
 Sundermann, P.J., Hildebrandt and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Coca-Cola attached excerpts of depositions to support its motion for summary judgment, but did not file the depositions themselves with the court. We cannot condone that practice. The better method is to file the entire deposition with the lower court so that it may be read by the trial judge in its entirety. However, Pinkerton did not object to the use of excerpts.