[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
In an employment action brought by plaintiff-appellant Veola Dogan against Procter Gamble ("PG"), she asserted claims of handicap discrimination in violation of R.C. 4112.02(A) as a result of PG's refusal to return her to work in 1992 until she was forced to retire on June 9, 1995, rather than be terminated. The trial court granted PG's motion for summary judgment, concluding that there was no genuine issue of material fact with respect to handicap discrimination. Dogan's single assignment of error on appeal is that the trial court erred in granting PG's motion because there were genuine issues of material fact in dispute. Discovery in this case consisted primarily of the deposition testimony and exhibits of Veola Dogan and PG Senior Human Resources Manager Judy Burnstein.
A court may grant summary judgment only when the moving party demonstrates that the record is devoid of genuine issues of material fact and that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party.[1] Where there are no disputed issues, summary judgment is properly granted to avoid a formal trial; however, the trial court may only grant summary judgment after construing the evidence in favor of the nonmoving party.[2] An appellate court reviews the record de novo to determine whether summary judgment is appropriate.[3]
To establish a prima facie case of handicap discrimination under R.C.4112.02(A), the person seeking relief must demonstrate that (1) he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, could safely and substantially perform the essential functions of the job in question.[4] Once the plaintiff establishes a prima facie case of handicap discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.[5] "Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to * * * the inability of the employee * * * to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question.[6] If the employer establishes a nondiscriminatory reason for the action taken, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination.[7] A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason.[8] "Ohio courts have held that, when interpreting R.C. Chapter 4112, it is appropriate to look at analogous federal statutes and case law."[9] Because the evidence in this case refuted Dogan's claim that there were genuine issues of material fact, the trial court properly granted PG's motion for summary judgment.
There is no question that Dogan was not was able to perform safely and substantially any job from 1992 until her retirement in 1995. Dogan, while working as a packer-operator at PG, was injured in a slip-and-fall accident on a wet floor on January 24, 1985. Although not having returned to work since her injury in 1985, in September 1992, Dogan inquired about a PG security-guard position, which she was denied. While one of Dogan's treating physicians, Dr. Hal S. Blatman, did write a note at this time approving Dogan's return to work with restrictions, Dogan did not provide PG with a similar note from her psychiatrist Dr. Baltazar G. Anaya. Dr. Anaya had been treating Dogan from 1989 through the date of her deposition on January 5, 1999, for chronic depression and severe back pain, and she continued to take medication prescribed by him. In cross-examination during her deposition, Dogan stated that she had never told Dr. Anaya that she was interested in the guard job or going back to work, and had never asked Dr. Anaya for a note approving her return to work. Dogan confirmed that Dr. Anaya's position was that she was unable to work. When asked if PG should rely on what Dr. Anaya told the company, Dogan responded, "You would have to, that's the only thing that you can go by." As recently as June 18, 1999, in a letter[10] signed by Dr. Anaya concerning Dogan, he wrote, "Throughout all these many years the patient has not been able to work at all, not even on a part time basis." Because Dogan never provided a written release from Dr. Anaya for return to work at any time, she did not meet her burden to satisfy the requirement that she was qualified to perform the essential functions of the job.[11]
PG articulated legitimate, non-discriminatory reasons for its actions. During the deposition of PG Senior Human Resources Manager Judy Burnstein, she stated that Dogan had not been considered for the security-guard position in September, 1992 because at that time it had already been contracted out. Further, when it had been available earlier in 1992, Dogan had not yet provided PG with the required doctors' letters permitting her safe return to work. Burnstein stated that PG insisted on written notification from doctors. Subsequent to September 1992, Burnstein stated Dogan had applied for PG disability benefits for a psychological condition. Burnstein also learned that Dogan had previously filed a workers' compensation claim for her psychological condition, thus, requiring PG to process a loan until the matter was resolved. PG had notice that Dogan continued under Dr. Anaya's care, as physician certificates were required for the disability loan. A certificate dated September 13, 1993, from Dr. Anaya indicated that it was unknown when Dogan could return to work. When given the choice of full retirement or termination in 1995, Dogan had been absent from the job since 1985, had never provided PG with Dr. Anaya's approval to return to work, and had never given any indication as to when she would be able to return to work with his approval. "Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected"[12]
Dogan did not show that the employer's stated reasons to her were a pretext for impermissible discrimination. Dogan admitted being told by PG that she was not considered for a security-guard position because of her medication, not because of a handicap. Dogan, as of the date of her deposition in 1999, continued to take medication prescribed by Dr. Anaya. Dogan admitted never even asking Dr. Anaya for a release to return to work. Accordingly, the reasons given to Dogan by PG were not false or based on impermissible discrimination. The trial court correctly concluded that there was no genuine issue of material fact with respect to handicap discrimination.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Painter and Winkler, JJ.
[1] See Civ.R. 56(B); see, e.g., Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801; Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.
[2] See Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2,433 N.E.2d 615, 616; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267, 274.
[3] See id.; Wille v. Hunkar Laboratories, Inc. (1998),132 Ohio App.3d 92, 724 N.E.2d 492.
[4] See Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298,658 N.E.2d 738, paragraph one of the syllabus, citing Hazlett v. MartinChevrolet, Inc. (1986), 25 Ohio St.3d 279, 281, 496 N.E.2d 478,480.
[5] See Hood v. Diamond Products, Inc., supra, 74 Ohio St.3d at 302,658 N.E.2d at 741, citing Plumbers Steamfitters Joint ApprenticeshipCommt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197,421 N.E.2d 128, 132.
[6] See Hood v. Diamond Products, Inc., supra,74 Ohio St.3d at 302, 658 N.E.2d at 741-742.
[7] See Hood v. Diamond Products, Inc., supra, 74 Ohio St.3d at 302,658 N.E.2d at 742, citing Plumbers Steamfitters Joint ApprenticeshipCommt., supra, 66 Ohio St.2d at 197, 421 N.E.2d at 132.
[8] See Cochran v. Columbia Gas of Ohio, Inc. (Sept. 26, 2000), Franklin App. No. 00AP-72, unreported, at 8, citing Brown v. Renter'sChoice, Inc. (N.D.Ohio. 1999), 55 F. Supp.2d 788, 795, quoting St. Mary'sHonor Ctr. v. Hicks (1993), 509 U.S. 502, 512, 113 S.Ct. 2742, n. 4.
[9] Cochran, supra, at 8, citing Wooten v. Columbus, Div. of Water
(1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610; see, also, Civ.Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204,206-207 (the federal Americans with Disabilities Act is similar to the Ohio handicap-discrimination law).
[10] See Attachment M to PG's motion for summary judgment filed September 28, 1999.
[11] See Gantt v. Wilson Sporting Goods Company (C.A.6, 1998),143 F.3d 1042, 1047.
[12] See id.