JOURNAL ENTRY AND OPINION
Plaintiff-appellant Nida Kocijan (Kocijan) appeals from the trial court's entry directing verdicts for defendant-appellee Michael Lebovich (Lebovich) on Kocijan's handicap-discrimination, age-discrimination, and sexual-harassment claims. Kocijan also appeals from the trial court's entry of judgment nothwithstanding the verdict for defendant-appellee S 
N, Inc., d.b.a. Kilgore Trout (Kilgore Trout) on Kocijan's intentional infliction of emotional distress claim. Kocijan also raises several other assignments of error relating to decisions made by the trial court. For the following reasons, we affirm the trial court's decision.
A review of the record reveals the following facts: Kilgore Trout is a retail clothing store specializing in a line of high quality men's clothing, as well as a small line of women's clothing. The business is owned and operated through S N, Inc. by Walter Naymon (Naymon), its President.
Kocijan was hired as a seamstress at Kilgore Trout in December 1992 at the age of 54. Michael Lebovich was her supervisor and the head of the tailor shop located within Kilgore Trout.
In 1993, Kocijan went on medical leave for two-and-a-half months to have bilateral carpal tunnel surgery. When she returned to work, Kocijan claims that Lebovich started to treat her differently. Specifically, Kocijan claims that Lebovich pushed her to do her work faster than other employees, no longer allowed her to fit customers and requested that she keep a notebook detailing all of her work for his scrutiny, when no other employee was requested to do so.
Kocijan also claims that Lebovich used obscene language directed at her and in her presence. She claims that he made derogatory comments about women in her presence. She claims that he once asked her if she had a quickie when she came to work late in the morning. Kocijan has not alleged that Lebovich or anyone else at Kilgore Trout made sexual advances to her.
Kocijan complained to Naymon, the President of Kilgore Trout, about Lebovich's conduct. Following this discussion, Kocijan claims that Lebovich did not change his conduct and in fact, told her to leave Mr. Wally alone. Kocijan states that she then tried to ignore Lebovich while at work.
On December 7, 1995, Kocijan informed Lebovich that effective immediately she would be taking an extended medical leave in order to have a second carpal tunnel surgery. She presented a note from Dr. Daniel Leizman of Orthopedic Associates dated December 6, 1995 indicating that she was unable to work.
Shortly thereafter, Kocijan filed an application with the Ohio Bureau of Workers Compensation seeking temporary total disability benefits. As part of this application, her physician certified that she was totally disabled and unable to work.[1]
In a letter dated December 19, 1995, Kilgore Trout advised Kocijan of its requirement that a certificate from her doctor is required at least one week prior to returning to work stating that she was physically able to return to normal duties.
Kocijan remained on medical leave for more than eight months, during which time she presented several notes from Dr. Leizman stating that she was unable to work.[2] During this leave, Kocijan's duties were performed by other employees.
In April 1996, Kilgore Trout hired Janice Yoel, who was 56 years old, to fill Kocijan's position.
In July 1996, Kocijan contacted David Sigg (Sigg), Kilgore Trout's Operations Manager, to ask if she could return to work on August 12, 1996. She provided a letter from Dr. Leizman stating that she was able to return to work on that date.
On August 8, 1996, Kocijan met with Naymon and Sigg at Eaton Place, the mall where Kilgore Trout is located. At this meeting, Sigg and Naymon informed Kocijan that her position had been filled. They offered her a presser position for the same pay. Kocijan refused the position stating that she would not be physically able to do the job.
On April 29, 1997, Kocijan filed a complaint against Kilgore Trout in the United States District Court for the Northern District of Ohio alleging claims of age and handicap discrimination, sexual harassment, breach of employment contract, discharge in violation of public policy and intentional infliction of emotional distress.
On November 25, 1998, the federal court granted Kilgore Trout's motion for summary judgment and declined to exercise jurisdiction over the state claims.
On November 3, 1999[3], Kocijan filed this complaint in Cuyahoga County Court of Common Pleas alleging the claims that remained after the federal court declined to exercise jurisdiction, i.e., breach of employment contract, violation of public policy and intentional infliction of emotional distress. It also included allegations of promissory estoppel, equitable estoppel, and sex, age and handicap discrimination.
On December 3, 1999, Kilgore Trout, Naymon and Lebovich filed a joint motion for summary judgment which was granted in part by the trial court on February 28, 2000.
On August 24, 2000, Kilgore Trout, Naymon and Lebovich filed a second motion for summary judgment which was granted in part and denied in part on December 4, 2000.[4]
On August 20, 2001, the case went to trial before a jury on the claims of age, sex, and handicap discrimination against Lebovich only, and intentional infliction of emotional distress against Kilgore Trout only.
The trial court granted Lebovich's motion for directed verdict as to all of his claims but denied Kilgore Trout's motion for directed verdict on the intentional infliction of emotional distress. The jury returned a verdict on that claim in the amount of $50,000.
On September 5, 2001, Kilgore Trout filed a motion for judgment notwithstanding the verdict which was granted by the trial court on October 2, 2001.
Kocijan's motion for prejudgment interest, itemization of costs and motion for attorney's fees were denied as moot on October 2, 2001.
Kocijan has timely appealed and raises twelve assignments of error for our review. We will address plaintiff's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. The trial court erred to the prejudice of plaintiff-appellant by allowing defendants to file a second motion for summary judgment.
In her first assignment of error, Kocijan claims that the trial court should not have allowed the defendants to file a second motion for summary judgment. We disagree.
A trial court may consider a second motion for summary judgment predicated upon the same law and facts. Maxey v. Lenigar (1984),14 Ohio App.3d 458, 459. The order overruling the first motion for summary judgment is interlocutory in nature and subject to revision by the trial court at any time prior to the entering of a final judgment in the case. Id.
Accordingly, we find it was within the trial court's discretion to reconsider, upon the defendants' second motion for summary judgment, whether there were genuine issues of material fact and to grant the defendants' motion.
Kocijan's first assignment of error is overruled.
 II. The trial court erred to the prejudice of plaintiff-appellant in granting defendant-appellee's motion for directed verdict on plaintiff-appellant's age discrimination claim.
 III. The trial court erred in granting defendant-appellee Michael Lebovich's motion for directed verdict on plaintiff-appellant's sex discrimination claim.
 IV. The trial court erred in granting defendant-appellee Michael Lebovich's motion for directed verdict on plaintiff-appellant's handicap discrimination claim.
 V. The trial court erred by ruling on defendant Michael Lebovich's motion for directed verdict at the close of all the evidence, thereby trying the credibility of the witnesses.
In these assignments of error, Kocijan challenges the directed verdict entered by the trial court in favor of Lebovich on her claims for age, sex, and handicap discrimination.
A directed verdict should be granted if the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172. A jury should consider a plaintiff's claim only if the probative evidence, if believed, would permit reasonable minds to come to different conclusions as to the essential issue of the case. Id. If substantial evidence exists in support of plaintiff's claim, the motion must be overruled. Pariseau v. Wedge Products, Inc. (1988),36 Ohio St.3d 124, 127.
In deciding whether to grant a motion for a directed verdict, the trial court does not weigh evidence or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66; O'Day v. Webb (1972), 29 Ohio St.2d 215. Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment. Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
With these principles in mind, we proceed to consider whether the trial court's grant of directed verdicts in Lebovich's favor was appropriate.
 A. Age Discrimination
A plaintiff may establish a prima facie case of age discrimination by providing either direct or indirect evidence of discrimination. Here, Kocijan claims that she established a prima facie case of age discrimination through indirect evidence.
A plaintiff may establish a prima facie case of age discrimination indirectly by demonstrating (1) that she was a member of the statutorily-protected class, (2) that she was discharged, (3) that she was qualified for the position, and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146 Here, Kocijan was a member of a protected class since she was 59 years old. However, she failed to meet the other three elements. At trial, the evidence failed to show that Kocijan was actually terminated from her position. Kilgore Trout hired a replacement in April 1996, five months after Kocijan left on her extended leave. Several months later, Kilgore Trout offered her alternate employment as a presser, which she refused. Kocijan also failed to show that she was qualified for her original position. At trial, she testified that she is still disabled from working as a seamstress and still receives disability benefits. (Tr. 416). In addition, medical reports from her doctors indicate that she is disabled and unable to work. Finally, Kocijan was replaced by Janet Yoel, who was 56 years old.
In addition, the trial court specifically found that there was no evidence to suggest that Lebovich had any part in the decision that the plaintiff could not return to work and no evidence to suggest that Lebovich's attitude towards Kocijan was related to her age. (Tr. 586).
Reasonable minds could only conclude that Kocijan failed to establish a prima facie case of age discrimination. Accordingly, the trial court did not err in granting Lebovich's motion for a directed verdict on Kocijan's age discrimination claim.
 B. Sex Discrimination
R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. This includes subjecting the employee to sexual harassment. Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 723.[5]
Here, Kocijan has alleged "hostile environment" sexual harassment. In order to establish a claim of hostile-environment sexual harassment, Kocijan must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 176-77.
Not all workplace conduct that can be construed as having sexual overtones can be characterized as harassment forbidden by the statute. Mentor Savings Bank v. Vinson (1986), 477 U.S. 57, 67. Rather, the conduct complained of must be severe or pervasive enough to create an environment that not only the victim subjectively regards as abusive but also a reasonable person would find hostile or abusive. Harris v. Forklift Systems, Inc. (1993), 510 U.S. 17, 21-22. Pursuant to this standard, conduct that is merely offensive is not actionable. Id. at 21.
The court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine if the conduct is actionable. These factors include the following:
(1) the conduct's frequency;
(2) the conduct's severity;
 (3) whether the conduct is physically threatening or humiliating; and
 (4) whether the conduct unreasonably interferes with the victim's work performance. Id. at 23
With these factors in mind, we examine the evidence before the trial court. Kocijan complained of approximately four instances of Lebovich's conduct toward her over a period of several years: (1) he used obscene language in the tailor shop; (2) he uttered obscenities in Russian, which she understood; (3) he once asked if she had a quickie when she came in late one morning; and (4) he made a comment once that another female employee was thinking with her vagina. Lebovich never touched Kocijan. He made no threats. He did not ask her, explicitly or by implication, to have sex with him. While Lebovich's actions may be offensive, inappropriate and unprofessional, Title VII was "not designed to purge the workplace of vulgarity." Baskerville v. Culligan Internat'l Co. (C.A.7, 1995), 50 F.3d 428, 430.
While we do not condone the conduct of Lebovich, we find as a matter of law that no reasonable jury could find that the actions of Lebovich were based on sex or were severe or pervasive enough to create an objectively hostile work environment. Not all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII. Meritor, 477 U.S. at 67.
Finally, since Kocijan stated that the quality and quantity of the work she performed never suffered and was always good[6], she cannot prove that Lebovich's actions toward her affected her in her work performance.
Since the evidence shows that Kocijan cannot establish the elements necessary to support her claim of workplace sexual harassment in violation of R.C. 4112.02, the trial court did not err in granting Lebovich's motion for directed verdict on her claim for sexual harassment.
 C. Handicap Discrimination
R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the handicap of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
In order to establish a prima facie case of handicap discrimination pursuant to R.C. Chapter 4112, the person seeking relief must demonstrate: (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. Hood v. Diamond Prod., Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus, citing Hazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279.
Here, Kocijan is handicapped as set forth in R.C. 4112.01(A)(13) since her condition rendered her unable to work as a seamstress with unrestricted duties. However, she failed to meet the other two elements. At trial, the evidence failed to show that any adverse job action was taken against Kocijan by Lebovich. Rather, Kilgore Trout hired a replacement after Kocijan failed to return to work after nearly five months. Kilgore Trout offered her alternate employment as a presser, which she refused. Kocijan also failed to show that she could safely and substantially perform the functions of the job. All medical reports stated that Kocijan was unable to perform the functions of the job of seamstress.[7] In addition, Kocijan herself testified that she is still disabled from working as a seamstress and still receives disability benefits. (Tr. 416).
Reasonable minds could only conclude that Kocijan failed to establish a prima facie case of handicap discrimination. Accordingly, the trial court did not err in granting Lebovich's motion for a directed verdict on Kocijan's handicap-discrimination claim.
 D. Credibility of Witnesses
Finally, Kocijan argues that the trial court considered the weight of the evidence and the credibility of witnesses and construed inferences in its decision to grant Lebovich's motion for directed verdict. We disagree. After reviewing the record, we conclude the trial court made a thorough analysis of the evidence and correctly followed the requirements of Civ.R. 50(A)(4) in making its determination that there was no evidence of substantial probative value to support Kocijan's claims.
Accordingly, Kocijan's second, third, fourth and fifth assignments of error are overruled.
 VI. The trial court erred and abused its discretion by granting Kilgore Trout's motion for judgment notwithstanding the verdict after immediately denying its motion for directed verdict on the count of intentional infliction of emotional distress.
 VII. Based on all admissible evidence and drawing all reasonable inference in favor of the prevailing party, it was error for the trial court to grant the judgment notwithstanding the verdict on the intentional infliction of emotional distress count when as in Hampel the totality of the circumstances and the evidence supported the jury verdict.
In these assignments of error, Kocijan claims that the trial court erred in granting the motion for judgment notwithstanding the verdict filed by Kilgore Trout on her claim for intentional infliction of emotional distress.
Civ.R. 50(B) provides in pertinent part:
 Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion * * *.
The test to be applied by the trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271; Cunningham v. Hildebrand (2001), 142 Ohio App.3d 218,224.
With this principle in mind, we proceed to consider whether the trial court's entry of a judgment notwithstanding the verdict in Kilgore Trout's favor on Kocijan's claim for intentional infliction of emotional distress was appropriate.
In order to establish a claim of intentional infliction of emotional distress, Kocijan must show (1) that Kilgore Trout either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to Kocijan; (2) that Kilgore Trout's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that Kilgore Trout's actions were the proximate cause of Kocijan's psychic injury; and (4) that the mental anguish suffered by Kocijan is serious and of a nature that no reasonable man could be expected to endure it. Burkes v. Stidham (1995), 107 Ohio App.3d 363, 375. Serious emotional distress requires an emotional injury that is both severe and debilitating. Id.
To recover for intentional infliction of emotional distress in Ohio, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Yeager v. Loc. Union 20 (1983),6 Ohio St.3d 369, 374-375.
With these factors in mind, we examine the evidence before the trial court. Kocijan claims that the following actions on the part of Kilgore Trout constituted reckless, wanton, extreme and outrageous conduct: (1) graphic language was used in her presence; (2) Lebovich, her supervisor, criticized her work, belittled her once in front of a customer and swore at her and in the customer's presence; (3) Naymon, the President, ignored her request for help; and (4) Naymon told her in the middle of a mall that she could not return to work.
We conclude that these allegations do not satisfy the elements of intentional infliction of emotional distress as a matter of law. Kocijan failed to present any evidence to indicate that Kilgore Trout, through its president Naymon, or its employee Lebovich, intended to cause her emotional distress, or knew or should have known that anyone's actions would result in serious emotional distress. Further, this behavior did not constitute extreme and outrageous conduct. Accordingly, the trial court did not err in granting Kilgore Trout's motion for judgment notwithstanding the verdict on Kocijan's claim for intentional infliction of emotional distress.
Kocijan's sixth and seventh assignments of error are overruled.
 VIII. The trial court erred in denying plaintiff-appellant's motion in limine, allowing evidence of her workers' compensation claims to be admitted as evidence.
In this assignment of error, Kocijan argues that the trial court erroneously permitted Kocijan to be questioned with regard to her workers' compensation claims. We disagree.
Evidence of workers' compensation claims cannot be used to automatically preclude an employee from pursuing a handicap discrimination claim. Smith v. Dillard Department Stores (2000),139 Ohio App.3d 525 (an employee is not judicially estopped from asserting that she is a "qualified disabled person" because she previously claimed total disability in order to receive workers compensation benefits). However, evidence of a plaintiff's application for total disability benefits is admissible where the plaintiff claims that she is capable of performing her job functions. Cleveland v. Policy Management Systems Corp. (1999), 526 U.S. 795.
Here, defendants did not claim that Kocijan was judicially estopped from bringing her claim of handicap discrimination due to the representations she made on her application for workers' compensation, where her physician claimed she was totally disabled and unable to return to work. See Smith, supra. Rather, defendants introduced evidence of the workers' compensation claims to illustrate the inconsistency of Kocijan's claims. Kocijan alleged that she was the victim of handicap discrimination at the same time that she was certifying to the Workers' Compensation Bureau that she was not permitted and was not physically able to work.
In addition, unlike the employee in Smith, supra, Kocijan failed to present any evidence that she could perform the essentials of her job with or without reasonable accommodation. See Cleveland v. Policy Management Systems, supra.
Finally, the trial court invited Kocijan's counsel to submit jury instructions to indicate the difference between disabled for purposes of Workers' Compensation as opposed to disabled. Kocijan failed to do so.
Kocijan's eighth assignment of error is overruled.
 IX. The trial court erred in instructing the jury a second time on punitive damages when the verdict form read, we the jury find in favor of the plaintiff and against Kilgore Trout on plaintiff's claim for intentional infliction of emotional distress and, then, further requesting that the jury reconcile the interrogatories and general verdict.
In this assignment of error, Kocijan argues that the trial court made erroneous jury instructions. Specifically, Kocijan argues that the trial court should not have instructed the jury twice on the issue of punitive damages and should not have requested the jury to reconcile the interrogatories and general verdict. We disagree.
The jury returned a verdict form awarding $20,000 as compensatory damages and $30,000 as punitive damages on Kocijan's claim of intentional infliction of emotional distress. The jury then answered an interrogatory stating that Kocijan was awarded $50,000 for past pain and suffering. In chambers, counsel for both parties agreed that the jury forms should be resubmitted to the jury to resolve the apparent inconsistency.[8] (Tr. 657). Thus, the trial court did not err in requesting the jury to reconcile the interrogatories and general verdict.
With regard to the re-reading of the punitive damages language, Kocijan's counsel agreed that the trial judge could do so. (Tr. 661). Indeed, when the trial judge offered to redefine compensatory damages as well, Kocijan's counsel declined the offer. (Tr. 662-663).
Kocijan's ninth assignment of error is overruled.
 X. The trial court erred in denying Kocijan's motion for attorney's fees as moot.
 XI. The trial court erred in denying Kocijan's motion for prejudgment interest as moot.
 XII. The trial court erred by denying Kocijan's motion for costs as moot.
In these assignments of error, Kocijan argues that she is entitled to an award of attorney fees, pre-judgment interest and costs and that the trial court erred when it failed to award them. We disagree.
Kocijan has not recovered a judgment against the defendants. Kocijan did not prevail on any of her claims. An award of attorney fees, pre-judgment interest and costs may only be awarded to a prevailing party or one who obtains a judgment. See R.C. 1343.03 and Civ.R. 54(D).
Kocijan's tenth, eleventh and twelfth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Kocijan filed additional applications in February, May and July of 1996. Plaintiff was awarded these benefits and received them from December of 1995 through at least October 30, 1997.
[2] These notes are dated December 28, 1995; February 7, 1996; March 9, 1996; March 27, 1996; and May 9, 1996.
[3] Kocijan's original complaint was filed on June 8, 1999. The amended complaint added Lebovich and Naymon as defendants and added allegations of sex, age and handicap discrimination.
[4] All counts of the amended complaint alleging discrimination were dismissed as to Kilgore Trout and Naymon. Summary judgment as to Lebovich was denied.
[5] In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991),61 Ohio St.3d 607, 609-610.
[6] See Kocijan's appellate brief at page 5.
[7] Kocijan submitted a letter from Dr. Leizman dated July 29, 1996 which stated that she would be able to return to work. However, a subsequent letter dated September 9, 1996, reversed this opinion and stated that Kocijan would be unable to return to work as a tailor/seamstress.
[8] Compensatory damages include actual losses, including past and future medical bills, pain and suffering, disabilities or disfigurement and loss of enjoyment of life. Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601, 612. Punitive damages are intended to punish the tortfeasor and to deter other potential tortfeasors from engaging in similar behavior. Preston v. Murty (1987), 32 Ohio St.3d 334, 335. Thus, the $50,000 awarded under pain and suffering is included under compensatory and not punitive damages.