**SMITH, Appellant,**

v.

**DILLARD DEPARTMENT STORES, INC. et al., Appellees.**

[Cite as *Smith v. Dillard Dept. Stores, Inc.* (2000), 139 Ohio App.3d 525.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74782.

Decided April 13, 2000.

526

*Lowe, Eklund, Wakefield Co., L.P.A.,* and *Dennis P. Mulvihill,* for appellant.

*Arter & Hadden, John B. Lewis, G. Farnan, Joseph King* and *Thomas J. Piatak,* for appellees.

———

ANNE L. KILBANE, Judge.

Appellant Nancy Smith asserted claims of handicap discrimination and negligent and intentional infliction of emotional distress against her former employer, appellee Dillard Department Stores, Inc. ("Dillard"). Smith claims that Judge Nancy Margaret Russo erred in granting Dillard's motion for summary judgment because genuine issues of material fact exist about whether she could have performed her job had Dillard made reasonable accommodations for her physical limitations and whether Dillard inflicted emotional distress upon her. Dillard contends not only that Smith did not meet her burden of proof to avoid summary judgment but that she also is estopped from bringing a claim for discrimination because she both applied for and received temporary total disability benefits ("TTD") through the workers' compensation system. We agree there was error in granting summary judgment on her disability claim, and reverse and remand for further proceedings. We do not agree, however, that the judge erred in granting summary judgment on her claim for intentional infliction of emotional distress, and we affirm that portion of the judgment.

On February 14, 1992, Dillard hired Smith for the position of manager of the Chanel cosmetics counter in its Westgate Mall store in Rocky River, Ohio. Her duties included greeting and soliciting potential customers, demonstrating and selling cosmetics, scheduling makeover appointments for Chanel makeup artists, and completing the necessary inventory and paperwork associated with the Chanel products. On June 3, 1992, as she returned from her dinner break, Smith caught her leg on the corner of a display counter and fell, but she continued to work the remainder of that evening. What appeared to be a simple ankle injury worsened, and the following day, she visited the emergency room of a local hospital, where a cast was placed on her leg. Because she was required to keep her leg elevated, it prevented her from working.

Subsequently, Smith was diagnosed with reflex sympathetic dystrophy, a condition that limits the ability of her leg to undergo constant stress, such as standing, because the stress causes muscle spasms that will cause her hip to rotate inward. This condition required Smith to undergo several surgeries on her ankle, and eventually she developed a progressive deformity and dysfunction of her lower leg, known as dystonia. As a result of this condition, Smith has developed an unusual gait and is unable to walk on the heel of her foot. Any

attempt to force her heel to the ground causes her leg to rotate at the hip and her right kneecap to face her left leg. She also cannot simultaneously straighten both of her legs. Smith's treating physician, Dr. Wilber, opined that the dystonia was a direct result of her original injury. With the exception of working a few days after the injury, Smith has not returned to Dillard or any employment.

Smith filed for workers' compensation benefits and was awarded bimonthly payments of $552.70 for TTD retroactive to June 3, 1992.[1] On the Bureau of Workers' Compensation ("BWC") filings through October 1997, Dr. Wilber indicated that Smith was unable to return to her former position or other employment.

Dillard permitted a six-month unpaid medical leave of absence and allowed for termination of employment if the employee did not return after the expiration of his or her leave. Paperwork processed through the Westgate Dillard store terminated Smith October 7, 1993, because she failed to return from a leave of absence. Smith claims she received no notice that Dillard fired her until her attorney received an August 13, 1996 letter from a claims representative in Dillard's Arizona corporate office that terminated her TTD and mentioned the earlier 1993 termination.

The record reflects correspondence from December 1992 through January 1995 from Dillard's claims representatives regarding available "light work" for Smith and requesting from Dr. Wilber information about her current limitations on her ability to return to work. In a letter dated January 30, 1995, he stated to Dillard's claims representative that Smith was to avoid "prolonged standing, walking, climbing, lifting or carrying. She could potentially return to a job which requires predominately sitting with minimal walking." Through affidavit, Smith averred that the only job offer she ever received from the Westgate Dillard store was in March 1995, for a loading dock position which Smith declined due to her physical limitations.

In April 1996, Dr. Wilber provided the Dillard claims representative with Smith's "return to work" slip which indicated that she could return to sedentary work with certain restrictions: no prolonged walking or standing, no climbing, no uneven surfaces, no heavy carrying or lifting, and no bending, kneeling or stooping. Thereafter, Smith was not offered any job at a Dillard store.

By letter dated August 13, 1996, Dillard notified Smith's lawyer that, based on Dr. Wilber's release, they terminated her TTD benefits. It also contained the following language: "Ms. Smith is no longer employed with Dillard Department Stores and thus the self-insured employee recognizes the fact that she is entitled

---

1. Dillard is a self-insured employer.

to 200 weeks of wage loss provided she files documented job searches for those benefit periods being claimed." The letter also indicates that Dillard had hired a placement service to help her find another position.

On December 13, 1996, Dr. Wilber prepared a BWC request for TTD compensation. The benefits were eventually restored following Dr. Wilber's completion of this request, and Dillard paid her benefits retroactive to August 1996.[2] It does not appear that Dr. Wilber ever advised the BWC that Smith was ever able to return to her job or any other employment.

On January 24, 1997, Smith filed a complaint alleging handicap discrimination, in violation of R.C. 4112.02, and negligent and intentional emotional distress against Dillard and CRA Managed Care, Inc. The claims against CRA were voluntarily dismissed in September 1997. The judge granted Dillard leave to file a motion for summary judgment on October 2, 1997, to which Smith responded.

In its motion for summary judgment, Dillard asserted that (1) Smith was judicially estopped from asserting a handicap discrimination claim because she and her physician have continuously asserted in workers' compensation filings that she is totally disabled, (2) Smith is unable to perform the essential functions of her position, (3) the act of transferring Smith to another position is not a reasonable accommodation, and (4) Smith cannot prove she suffered any emotional distress resulting from Dillard's conduct.

In her response, Smith asserted that she suffers from a disability, that she is qualified to and can perform the functions of a cosmetic sales position with reasonable accommodation, like a stool upon which to rest, that Dillard did not offer her reasonable accommodation for her handicap, and that her compensation for TTD benefits does not preclude a handicap discrimination claim. She also claimed that she satisfied her burden of producing evidence to show that Dillard's actions amounted to an intentional infliction of emotional distress, but she acknowledged that her negligent infliction of emotional distress claim was not viable and withdrew it.

On June 2, 1998, the judge granted Dillard's motion for summary judgment but declined to apply the doctrine of judicial estoppel. Instead, the judge found that allowing Smith an extended leave of absence was a reasonable accommodation by Dillard, that Smith never asked Dillard to give her a position with duties where she could work with the aid of a stool, and that, because neither Smith nor Dr. Wilber ever stated she was able to return to other light, alternative, modified or transitional work, Dillard had no reason to know an accommodation was needed.

---

2. Dr. Wilber indicated that she was unable to return to her position as a clerk and that she was not "able to return to other employment including light-duty, alternative work, modified work or transitional work" and opined that Smith needed additional treatment.

Therefore, the judge concluded, because no genuine issues of material fact existed, Dillard was entitled to summary judgment in its favor. From this order, Smith filed a timely appeal.

Smith's sole assignment of error reads:

"Defendant–appellee Dillard's [*sic*] Department Store was not entitled to summary judgment."

Smith argues that the judge erred in granting summary judgment because a genuine issue of material fact remains as to whether Dillard ever attempted to reasonably accommodate her disabilities in her work environment so that she could return to work. She maintains that because Dillard did not attempt to reasonably accommodate her injuries, it is liable for handicap discrimination.

Dillard counters that Smith is judicially estopped from bringing her claim of handicap discrimination due to the representations she made on her application for TTD, where her physician claimed she was totally disabled and unable to return to work. Dillard also asserts that if she was unable to return to work, then, by definition, it need not have offered reasonable accommodation because of her total disability.

■ This court reviews the grant of summary judgment *de novo*, applying the same standard as that applied by the trial judge. *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717, 720–721. A judge may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; accord *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204.

R.C. 4112.02 prohibits handicap discrimination in employment. See, also, Ohio Adm.Code 4112–05–08(A) (prohibits discrimination in employment against a "qualified disabled person"). To establish a prima facie case of handicap discrimination, the plaintiff must demonstrate the following: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Prods.*, Inc. (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus, following *Hazlett v. Martin*

*Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333–334, 496 N.E.2d 478, 480–481; accord *Civil Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204, 205–206.

"Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reasons for the action taken. * * * Legitimate, nondiscriminatory reasons for the action taken by the employer may include * * * the inability of the employee or prospective employee to safely and substantially perform, with reasonable accommodations, the essential function of the job in question. * * * Finally, if the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d at 741–742.

Dillard does not dispute that Smith has a "handicap" as defined by R.C. 4112.01(A)(13).[3] Therefore, Smith has satisfied the first element of the *Hood* test.

Dillard also has not challenged the second element. Smith has produced evidence to show that Dillard took an "adverse employment action" in August 1996 when it terminated her TTD based upon Dr. Wilber's "return to work slip," which indicated that she could return to work under severe restrictions. According to Smith, this was the first time she learned that she had been fired three years earlier.

As to the third element, however, Dillard takes issue. Dillard claims that Smith is not a qualified handicapped person because she cannot perform the essential functions of the job with reasonable accommodation. It also claims that she is judicially estopped from claiming that she *can* perform the job with reasonable accommodation.

The administrative code uses the term "qualified disabled person" to define "a disabled person who can safely and substantially perform the essential functions of the job in question, with or without reasonable accommodation."

---

3. " 'Handicap' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). See, also, Ohio Adm.Code 4412–5–02(H) (" 'Disabled person' includes any person who presently has a disability as defined by division [A][13] of section 4112.01 of the Revised Code or any person who has had a disability as defined by division [A][13] of section 4112.01 of the Revised Code, who no longer has any functional limitation, but who is treated by a respondent as having such a disability, or any person who is regarded as disabled by a respondent.").

Ohio Adm.Code 4112-5-02(K). " 'Accommodation' as applied to employers means a reasonable adjustment made to a job and/or the work environment that enables a qualified disabled person to safely and substantially perform the duties of that position." Ohio Adm.Code 4112-5-02(A). "An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." Ohio Adm.Code 4112-5-08(E)(1).[4] "Reasonable accommodation includes both reasonable modification of the duties of the existing position, if feasible, and transfer, reassignment, or hire into a vacant position the handicapped employee can perform both physically and by qualification." *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610. An accommodation for a handicapped employee is unreasonable only if it places an undue hardship on the employer. *Id.* The employer has the burden to show that an accommodation would impose an undue hardship. *Id.,* citing *Greater Cleveland Regional Transit Auth. v. Ohio Civ. Rights Comm.* (1989), 58 Ohio App.3d 20, 24, 567 N.E.2d 1325, 1329.

Smith asserts that she can perform the essential functions of the cosmetics manager position if she is allowed to rest periodically on a stool. She claims that Dillard asserts that Smith cannot perform the essential functions of a cosmetics manager because the position necessarily requires stooping, standing, and walking, *i.e.,* it is a position that predominately requires her to be on her feet, and because it does not allow sales associates to sit behind the counter during the eight-hour shift.

■ Dillard's argument assumes that it cannot accommodate Smith's disability and that providing a stool upon which Smith can rest is an unreasonable accommodation. Dillard has not explained, however, how providing her with a stool, as she suggests, will cause it an undue hardship. Therefore, such an assertion is conclusory and does not satisfy its burden of proving that it cannot accommodate her in that particular position. *Wooten,* 91 Ohio App.3d at 334, 632 N.E.2d at 610; see Ohio Adm.Code 4112-5-08(D)(1) (places burden on the employer of establishing bases for discrimination, *e.g.,* inability to substantially perform the job or inability of the employer to accommodate). Therefore, Dillard has not conclusively established a nondiscriminatory reason for its employment action and has not defeated the third element of Smith's prima facie case. *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d at 741-742.

---

4. Reasonable accommodation "may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices, or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part-time work schedules." Ohio Adm.Code 4112-5-08(E)(2).

■ Dillard also takes another approach to this third element. According to Dillard, Smith should be judicially estopped from asserting that she is a "qualified disabled person" because she previously claimed total disability in order to receive workers' compensation benefits. Smith, however, argues that the doctrine of judicial estoppel should not apply under these circumstances given the differences between a workers' compensation claim and a handicap discrimination claim. Both parties find support for their positions in a recent United States Supreme Court decision.

"The doctrine of judicial estoppel 'forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.* (6th Cir.1990), 911 F.2d 1214, 1217. Courts apply judicial estoppel in order to 'preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.' *Teledyne,* 911 F.2d at 1218. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. *Id.*" *Griffith v. Wal–Mart Stores, Inc.* (C.A.6, 1998), 135 F.3d 376, 380.

With the above rule in mind, it is clear that judicial estoppel does not apply under the circumstances presented by Dillard. Assuming, for a moment, that Smith asserted a contrary position in pursuing her worker's compensation claim, Dillard has not shown that such position was taken under oath. Having failed to satisfy the second element of *Teledyne,* Dillard may not invoke the doctrine of judicial estoppel to defeat Smith's prima facie handicap discrimination case. Therefore, the judge did not err when she declined to apply the doctrine of judicial estoppel to the facts of this case.

Even in cases where an employee has asserted in a sworn statement, as required to receive Social Security Disability Insurance ("SSDI") benefits, that she was totally disabled, the employee is not automatically precluded from showing that she could "perform the essential functions" of her job with reasonable accommodation to support a discrimination in employment claim based upon the Americans with Disabilities Act of 1990 ("ADA"), Section 12111 *et seq.,* Title 42, U.S. Code. See *Cleveland v. Policy Management Sys. Corp.* (1999), 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966. As the court noted, "[t]he Social Security Act and the ADA both help individuals with disabilities but in different ways." *Id.,* 526 U.S. at 801, 119 S.Ct. at 1601, 143 L.Ed.2d at 973. It reasoned that Cleveland's pursuit and receipt of SSDI benefits, where she represented that she was unable to perform the tasks of her prior position and was unable to pursue other gainful employment, did not estop her from pursuing an ADA claim

because the SSDI representations did not take into consideration the possibility of her employer making a reasonable accommodation.. In clarifying conflicts among the federal courts, the court indicated that the contradictions at issue here were not purely factual, as they involved a conflict in the legal conclusion based upon the purported facts. *Id.*, 526 U.S. at 804–807, 119 S.Ct. at 1603–1604, 143 L.Ed.2d at 975–977. Therefore, the court concluded, Cleveland's "explanation [of the conflict] must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or [Cleveland's] good–faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.' " *Id.*, 526 U.S. at 807, 119 S.Ct. at 1604, 143 L.Ed.2d at 977. Because we determined earlier that judicial estoppel does not apply in the first instance, we need not apply *Cleveland* to distinguish the legal conclusions one may draw based upon the purported facts and the application of workers' compensation and handicap discrimination laws.

This does not end our query. The judge granted summary judgment in Dillard's favor after making the following determinations: (1) Dillard allowed Smith to take an extended leave of absence, which constituted a reasonable accommodation, and (2) she did not ask for accommodation *at the time of her injury* and, therefore, she could not expect Dillard to know that she wanted accommodation.

In support of the first proposition, the judge quoted the following passage from *Schmidt v. Safeway, Inc.* (D.Or.1994), 864 F.Supp. 991, 996–997: "[A] leave of absence to obtain medical treatment is a reasonable accommodation if it is likely that, following treatment, plaintiff would have been able to safely perform his duties." Contrary to the judge's conclusion, Smith did not allege that she was "able to safely perform her duties" in October 1993, the date at which Dillard terminated her extended medical leave. Moreover, the reasonableness of an accommodation ordinarily presents a question of fact for the jury to decide. E.g., *Lujan v. Pacific Maritime Assn.* (C.A.9, 1999), 165 F.3d 738, 743. See, also, *Brickers v. Cleveland Bd. of Edn.* (C.A.6, 1998), 145 F.3d 846, 849 (the determination of whether a function is essential within the meaning of the ADA is typically a question of fact for the jury). Therefore, the judge erred in granting summary judgment upon this basis.

With regard to the second proposition, Smith's failure to ask for accommodation at the time of her injury, the judge quotes the following passage from *Schmidt v. Safeway, Inc.*, 864 F.Supp. at 997, in support of her conclusion that summary judgment should be granted upon that basis: "Of course, the employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." This quote, however, is taken out of context. The two immediately preceding sen-

tences provide as follows: "The [ADA] does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term 'accommodation.'"

In any event, the handicap discrimination law does not require an employee to request reasonable accommodations at the time he or she sustains a work-related injury so that the employee will preserve the right to later seek damages against the employer on the chance that the employer may violate the law. To do so would require the employee to read an employer's mind and know, in advance, that the employer will later unlawfully discriminate against him. To reach such a conclusion serves neither logic nor the spirit of the law. Based upon the foregoing, the judge erred in concluding that no genuine issues of material fact remained to be litigated on Smith's handicap discrimination claim.

Finally, Smith also asserts that Dillard's actions constitute the intentional infliction of emotional distress. A claim of intentional infliction of emotional distress occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666 syllabus. The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 6 OBR at 421, 453 N.E.2d at 672. The conduct Smith complains of cannot be said to be outrageous in character and so extreme in nature as to go beyond all bounds of decency. Therefore, the trial court properly granted summary judgment on this cause of action.

In accordance with the foregoing discussion, Smith's single assignment of error is well taken in part.

*Judgment affirmed in part*
*reversed in part*
*and cause remanded.*

BLACKMON, J., concurs.

O'DONNELL, P.J., concurring in part and dissenting in part.

TERRENCE O'DONNELL, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority regarding Smith's claim for intentional infliction of emotional distress, but I respectfully dissent from the conclusions reached in the majority opinion regarding her handicap discrimination claim.

In my view, the trial court correctly granted summary judgment in favor of Dillard Department Stores, Inc. on the handicap discrimination claim for two reasons. One, Smith is judicially estopped from prosecuting this claim for handicap discrimination against Dillard's on the basis that she could perform her job duties if given a reasonable accommodation, because in seeking her workers' compensation benefits, her sworn statements are that she could *not* work, which resulted in a favorable ruling and an award of disability benefits. And two, she never asked for any accommodation to perform her work. Instead, she maintained she could *not* work.

In *Cleveland v. Policy Mgt. Sys., Corp.* (1999), 526 U.S. 795, 797–798, 119 S.Ct. 1597, 1600, 143 L.Ed.2d 966 971–972, where the court considered the recipient's receipt of disability benefits and simultaneous claim under the Americans with Disability Act, it stated:

"We believe that, in context, these two seemingly divergent statutory contentions are often consistent, each with the other. Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. *Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim* that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" (Emphasis added.)

The court further clarified the plaintiff's evidentiary burden in order to withstand a motion for summary judgment in such a case:

"When faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, *the court should require an explanation of any apparent inconsistency* with the necessary elements of an ADA claim. To defeat summary judgment, *that explanation must be sufficient to warrant a reasonable juror's concluding* that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the *plaintiff could* nonetheless '*perform the essential functions*' of her job, with or without 'reasonable accommodation.'" (Emphasis added.)

In *Mitchell v. Washingtonville Cent. School Dist* (1999), 190 F.3d 1, in analyzing *Policy Mgt. Sys., Corp., supra,* the court noted:

"The Supreme Court emphasized that the case before it did not 'involve directly conflicting statements about purely factual matters, such as * * * "I can/cannot raise my arm above my head,"' and indeed that the decision 'leaves the law related to * * * purely factual * * * conflict[s] where [the Court] found

it.'" quoting *Cleveland*, 526 U.S. at 802, 119 S.Ct. at 1601–1602, 143 L.Ed.2d at 974.

In its analysis of Mitchell's claim against the school district for terminating him in violation of the Americans with Disabilities Act, the court utilized the estoppel theory and affirmed the trial court's grant of summary judgment. It stated:

"Since Mitchell's earlier assertions as to his inability to walk or stand were accepted by these prior administrative tribunals, resulting in a determination in his favor, judicial estoppel prevents Mitchell from advancing, for purposes of this litigation, the contrary position.

"  *  *  *

"We also agree with the district court that, once estopped from arguing he could walk and stand and therefore bound to the assertion that he could only do sedentary work, Mitchell could not show that he could perform the essential functions of Head Custodian with a reasonable accommodation." See, also, *Budd v. ADT Security Sys.* (C.A.8, 1996), 103 F.3d 699.

In accordance with *Cleveland v. Policy Mgt. Sys., Corp.*, Smith had the burden to explain why her workers' compensation claim and her handicap discrimination claim are consistent. Based on Smith's failure to provide evidence reconciling these positions, a reasonable juror could not conclude that she was able to perform the essential functions of her job.

In addition, the estoppel analysis in *Mitchell* applies here: since Smith's earlier assertions regarding her inability to work and the repeated representations of her physicians to the Bureau of Workers' Compensation, that she was unable to work in any capacity had been accepted by the Bureau of Workers' Compensation, resulting in an award of temporary total disability benefits based on her diagnosed reflex sympathetic dystrophy condition, judicial estoppel prevents her form advancing a contrary position in this litigation. After repeatedly denying her ability to work *in any capacity* and stating she could not even accept light duty, modified, or transitional work, she now suddenly claims in this litigation that she could have performed her duties with the use of a stool. However, the record does not reflect that she asked Dillard to provide her with a stool or advanced any position other than her inability to work in any capacity. Thus, in my view, the trial court, after thoroughly analyzing the law, correctly granted summary judgment to Dillard's on this claim.

Accordingly, I dissent from this portion of the majority opinion.