OPINION
{¶ 1} Plaintiff-appellant, Rome Hilliard Self Storage ("Rome Hilliard"), appeals from a judgment of the Franklin County Municipal Court granting the motion of defendants-appellees, Lewis I. and David L. Conkey, for judgment on the pleadings. Because the record demonstrates no prejudicial error in the trial court's granting the Conkeys' motion for judgment on the pleadings, we affirm.
 {¶ 2} The relationship between the Conkeys and Rome Hilliard began on September 28, 1995, when Lewis Conkey contracted to rent a parking space from Rome Hilliard so he could store his motor home. Ten months later, on the recommendation of Lewis Conkey, David Conkey contracted to rent two more parking spaces from Rome Hilliard for a trailer and open car hauler.
 {¶ 3} The contracts the Conkeys signed each contained the following clause:
7. NON-LIABILITY OF OWNER AND INSURANCE OBLIGATION OF OCCUPANT: a) Occupant, at their expense, shall obtain all insurance which occupant requires for protection of property in space. * * * c) Occupant agrees to indemnify and hold harmless owner, its employees or agents from any claims for damages to property or personal injury, and cost, including attorney's fees, arising from use of premises by occupant. * * *
 {¶ 4} Unfortunately, despite Rome Hilliard's security lights, closed-circuit camera, electronic code-activated access gate, and managers living on-site, the Conkeys' trailer, parked in the storage facility, was stolen on February 7, 1997.
 {¶ 5} The loss gave rise to the first litigation ("the ancillary litigation"). Specifically, on July 9, 1997, the Conkeys filed a complaint against Rome Hilliard seeking tort damages for the theft of their personal property. The Conkeys alleged that: (1) the storage contract, in particular paragraph seven, was not enforceable because they had been defrauded by Rome Hilliard's misleading statements, material misrepresentations, and deceptive acts, and (2) Rome Hilliard had violated the Ohio Consumer Sales Practices Act ("OCSPA"), R.C.1345.02(B)(1) and (2) and 1345.03(B)(6). Rome Hilliard filed a timely answer on July 25, 1997 and subsequently added a counterclaim for attorney fees.
 {¶ 6} On April 16, 1998, the Conkeys moved to dismiss Rome Hilliard's counterclaim for attorney fees, contending the counterclaim was a premature Civ.R. 11 motion that should be dismissed as not ripe for adjudication. Rome Hilliard, on the other hand, contended it was not asserting a Civ.R. 11 motion, but rather an affirmative counterclaim based on R.C. 1345.09(F)(1), the attorney fees provision of the OCSPA. On May 26, 1998, the trial court sustained the Conkeys' motion to dismiss Rome Hilliard's counterclaim, determining that, "* * * at this time, [Rome Hilliard] [has] failed to state a claim where relief could be granted. This Court is not precluding [Rome Hilliard] from filing any motions during or after the pendency of this case for any relief to which they feel entitled." (Decision, 2-3.)
 {¶ 7} After its counterclaim was dismissed, Rome Hilliard filed a motion for summary judgment on October 2, 1998; the trial court granted the motion on December 11, 1998. Following the trial court's decision granting its motion, Rome Hilliard neither filed a Civ.R. 11 motion for attorney fees nor appealed the trial court's decision dismissing its counterclaim. Rather, the Conkeys brought the only appeal in the ancillary litigation. On December 2, 1999, this court affirmed the trial court's judgment granting summary judgment to Rome Hilliard.
 {¶ 8} Over two years later, on May 13, 2002, Rome Hilliard filed a complaint requesting reimbursement for its attorney fees and litigation costs incurred in the ancillary litigation. According to the allegations of its complaint, it suffered significant financial losses due to the frivolous nature of the Conkeys' lawsuit, and it asserted it was entitled to repayment of its attorney fees and costs under the indemnification clause of its storage contract with the Conkeys.
 {¶ 9} The Conkeys answered on June 10, 2002, raising two defenses. They argued that (1) Rome Hilliard's claim for attorney fees under the contract was a compulsory counterclaim to the ancillary litigation under Civ.R. 13(A), and (2) the doctrine of res judicata precluded Rome Hilliard's claim for attorney fees in the subsequent litigation. On June 28, 2002, the Conkeys filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), asserting the same two legal theories. The trial court granted the Conkeys' motion on August 22, 2002 and entered judgment accordingly.
 {¶ 10} Rome Hilliard timely appeals, and assigns three errors:
Assignment of Error No. 1
The trial court erred by granting the motion of Defendants/Appellees for judgment on the pleadings on the basis that Rome Hilliard's claim was a compulsory counterclaim to the ancillary litigation.
Assignment of Error No. 2
The trial court erred by granting the motion of Defendants/Appellees for judgment on the pleadings because Rome Hilliard's claim was not ripe at the time it filed its Answer in the ancillary litigation.
Assignment of Error No. 3
The trial court erred by granting the motion of Defendants/Appellees for judgment on the pleadings on the basis that Rome Hilliard's claim was barred by the doctrine of res judicata.
 {¶ 11} Rome Hilliard's first, second, and third assignments of error are interrelated and assert the trial court erred by granting the Conkeys' motion for judgment on the pleadings because Rome Hilliard's counterclaim for attorney fees was not a compulsory counterclaim in the ancillary litigation, was not ripe at the time of the ancillary litigation, and therefore was not barred by res judicata.
 {¶ 12} Contrary to Rome Hilliard's contentions, its counterclaim for attorney fees was compulsory. Under Civ.R. 13(A), a "pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The purpose of Civ.R. 13(A) is "to avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." Rettig Enterprises, Inc. v. Koehler (1994), 68 Ohio St.3d 274, 278 (referring to Staff Notes [1970] to Civ.R. 13; 6 Wright, Miller Kane, Federal Practice and Procedure [Civil 2d 1990] 46, Section 1409).
 {¶ 13} Civ.R. 13(A) sets forth a two-pronged test for determining whether a counterclaim is compulsory. Geauga Truck Implement Co. v. Juskiewicz (1984), 9 Ohio St.3d 12, 14. First, the claim must exist at the time the pleading is served. Id. Second, the claim must arise out of the same "transaction or occurrence" as the subject matter of the opposing claim. Id. Ohio courts have liberally construed the "transaction or occurrence" language from Civ.R. 13(A) in favor of compulsory counterclaims. See, e.g., Osborn Co. v. Ohio Dept. of Adm. Serv. (1992),80 Ohio App.3d 205, 209; Hershman's, Inc. v. Sachs-Dolmar Div. (1993),89 Ohio App.3d 74, 79; Sherman v. Pearson (1996), 110 Ohio App.3d 70,76.
 {¶ 14} In so doing, "the courts have adopted a `flexible test of reviewing the transaction to determine whether there is any logical relationship between the claim and the counterclaim.' " Hershman's at 79, quoting Eastman v. Benchmark Minerals, Inc. (1986), 34 Ohio App.3d 255,257; Rettig Enterprises at 278. The "logical relation" test in effect examines whether separate trials on each party's respective claims would involve substantial duplication of effort and time. Great Lakes Rubber Corp. v. Herbert Cooper Co. (C.A. 3, 1961), 286 F.2d 631, 634. Here, the issue resolves to whether Rome Hilliard's counterclaim arose from, or was logically related to, the same transaction or occurrence as the Conkeys' tort and OCSPA claims.
 {¶ 15} Rome Hilliard's "counterclaim for the reimbursement of attorneys fees is a claim which `arises out of the transaction or occurrence that is the subject matter of the opposing party's claim' and is therefore a compulsory counterclaim." L.M. Lignos Enterprises v. Beacon Ins. Co. of Am. (Feb. 13, 1997), Cuyahoga App. No. 70816. L.M. Lignos Enterprises involved a defendant who voluntarily withdrew its counterclaims, one of which was for reimbursement of attorney fees expended in defending the action. Subsequently, a Civ.R. 12(C) judgment on the pleadings was granted in favor of the plaintiffs without resolution of defendant's counterclaims. When the defendant tried to file a new claim for attorney fees against the plaintiff, the plaintiff asserted the claim was barred because it was a compulsory counterclaim to the first litigation. The court agreed, holding that the defendant was precluded from litigating the claim based on the doctrine of res judicata.
 {¶ 16} Similarly, Rome Hilliard's claim for attorney fees involves duplicating evidence previously explored in the ancillary litigation. The core facts in the present litigation would be substantially the same, if not identical, to those in the ancillary litigation because only one set of events gave rise to all of the claims: the storage contract was the basis of both the ancillary and the present litigation. Civ.R. 13(A) was designed to prevent such duplicative use of the courts' and the parties' time and resources. See, also, Restatement of the Law 2d, Judgments ("[t]he present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff * * * regardless of the variations in the evidence needed to support the theories or rights").
 {¶ 17} Rome Hilliard nonetheless asserts that because its claim for attorney fees was based in contract and the Conkeys' claims in the ancillary litigation were based in tort, the two actions present different issues of law and fact that render Civ.R. 13(A) inapplicable. Contrary to Rome Hilliard's contentions, a tort claim can be a compulsory counterclaim to a contract action and vice versa. Sherman at 74, quoting Koukios v. Marketing Dynamics, Inc. (Sept. 7, 1994), Hamilton App. No. C-920913; Fogle v. Riber (June 30, 1986), Fayette App. No. CA85-08-011. "The difference in the nature of the actions is not paramount; rather, the issue is whether the two claims have a sufficient legal or factual nexus to satisfy the `logical-relation' test." Sherman at 74.
 {¶ 18} We recognize that Rome Hilliard's initial counterclaim for attorney fees was dismissed as premature in the ancillary litigation, suggesting possible application of the judicial estoppel doctrine. "The doctrine of judicial estoppel `forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding".'" Smith v. Dillard Dept. Stores, Inc. (2000), 139 Ohio App.3d 525, 533, quoting Teledyne Indus., Inc. v. Nat'l Labor Relations Bd. (C.A. 6, 1990), 911 F.2d 1214, 1217. The rationale of judicial estoppel is that "a party should not be allowed to convince one judicial body to adopt certain factual contentions and then subsequently unconscionably assert [to] another judicial body that these contentions were inaccurate and that a different set of facts should be found." Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse Co. (Dec. 21, 1993), Franklin App. No. 90AP-1124. The policy behind judicial estoppel is to " `preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, [by] achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" Smith at 533, quoting Teledyne at 1218. The doctrine applies only if three factors are met. The party asserting judicial estoppel must prove that its adversary "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." Id.
 {¶ 19} At first blush, the facts here might suggest the Conkeys should be judicially estopped from arguing that Rome Hilliard's counterclaims are compulsory, because the Conkeys formerly argued and prevailed on the theory that Rome Hilliard's counterclaim for attorney fees was not ripe in the ancillary litigation. Despite the seeming unfairness of the Conkeys' position, judicial estoppel does not apply.
 {¶ 20} While the record contains only the trial court's decision that dismissed Rome Hilliard's counterclaim in the ancillary litigation, the decision reveals the positions the parties argued. In the ancillary litigation, the Conkeys argued that Rome Hilliard's counterclaim was a premature Civ.R. 11 motion for sanctions that properly should be filed, if needed, after the case came to conclusion. The Conkeys did not argue that Rome Hilliard's substantive claim for attorney fees brought under R.C.1345.09(F)(1) was not ripe, or that a claim for attorney fees under the contract was premature. Although Rome Hilliard responded to the Conkeys motion to dismiss by asserting its counterclaim was for attorney fees under R.C. 1345.09(F)(1), the trial court nonetheless granted the motion to dismiss.
 {¶ 21} After the ancillary litigation ended, Rome Hilliard failed to either file a Civ.R. 11 motion for sanctions or appeal the trial court's judgment dismissing its R.C. 1345.09(F)(1) counterclaim. Instead, Rome Hilliard chose to abandon the R.C. 1345.09(F)(1) counterclaim and Civ.R. 11 motion and proceed two years later under a new substantive theory for attorney fees pursuant to the indemnification clause of the storage contract. Accordingly, even if the second two prongs of the Teledyne test are met, the first is not. The Conkeys never took a position in the ancillary litigation contrary to the position they now take in the present litigation.
 {¶ 22} Moreover, since Rome Hilliard failed to assert its claim for attorney fees under the contract in the ancillary litigation, res judicata bars Rome Hilliard from asserting in this litigation what was a compulsory counterclaim in the ancillary litigation. Osborn Co. at 210; Broadway Mgmt., Inc. v. Godale (1977), 55 Ohio App.2d 49, 50. See, also, Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus ("[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action").
 {¶ 23} Because Rome Hilliard's counterclaim was compulsory under Civ.R. 13(A) and, accordingly, was ripe, it is barred by res judicata. Rome Hilliard's first, second, and third assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, P.J., and LAZARUS, J., concur.