OPINION JUDGMENT ENTRY
{¶ 1} Plaintiff-Appellant Kenneth Himes appeals from the September 9, 2003, Judgment Entry of the Stark County Court of Common Pleas which granted Defendant-Appellee The Timken Company's motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Plaintiff-Appellant Kenneth Himes was an employee of Defendant-Appellee The Timken Company in the rolling mill at the Faircrest Steel Plant. Appellant had worked there since abut September, 1985.
 {¶ 3} Prior to the date of the accident in this case, Appellant had worked as a mill operator in a position known as a pulpit 2, or P2 for approximately eight years. (Himes Depo. at 17, 21, 68). This position required Appellant to operate a machine called a "scarfer". Id. at 21. A scarfer is a large machine used to remove a thin layer from al four sides of a block of steel, to eliminate the impurities in the surface of the steel. Id. at 21. (Garofalo Affidavit, at ¶ 4.)
 {¶ 4} Large bars of hot steel are rolled to the scarfer on rollers, and are pushed through the scarfer by "pinch rolls". (Garofalo Aff. at ¶ 5). The bars of steel are squeezed into flat sheets by these pinch rolls. The pinch rolls consist of two parts: a lower toll on which the steel moves, and an upper roll that closes and "pinches" the steel between it and the bottom roll. Id. at ¶ 6. This upper roll weighs in excess of 8,000 pounds. The upper pinch roll is closed pneumatically through a control valve. Id. at ¶ 7. The operation of the valve is controlled by an electric solenoid. Id. When the valve is energized, nitrogen is fed to the pneumatic cylinders to close or open the top part of the pinch roll. Id. A pinch roll is located at each end of the scarfer. The entry pinch roll, when engaged, pushed steel into the scarfer, and the delivery pinch roll assists pulling steel from the scarfer when it it closed. Id. at ¶ 8.
 {¶ 5} It is undisputed that there was no mechanical stop in place to prevent the top roll from closing if the system became energized when such was not intended. The system did not contain a mechanism to block and bleed the pneumatic valve.
 {¶ 6} On December 28, 1998, the scarfer was not being operated. (Himes Depo. At 33). Appellant had the job of cleaning the scarfer on that day. Id. In order to clean the scarfer, Appellant climbed between the two rolls on the pinch roll at the entrance to the machine, while the upper roll was in an elevated position.
 {¶ 7} Normally, gravity and the weight of the upper roll would keep it in an elevated position. (Garofalo Aff. at ¶ 9).
 {¶ 8} According to Appellant, the nitrogen valve was in the "off" position. (Himes Depo. at 35). He also testified that his supervisor instructed him to make sure that the pinch roll would not close inadvertently. Id. at 34. Appellant testified that he went up into the pulpit and tried to operate the pinch roll and that the upper roll did not close. Id. at 34-35.
 {¶ 9} However, while Appellant was under the upper roll, cleaning the scarfer, the nitrogen valve malfunctioned, allowing nitrogen to slowly escape inside the valve. (Himes Depo. at 42; Garofalo Aff. at ¶ 10). The nitrogen escaping through the control valve activated the pneumatic cylinder and caused the pinch roll to close on Appellant, causing him injury. (Garofalo Aff. at ¶ 10).
 {¶ 10} On November 14, 2002, Plaintiff-appellant filed his Complaint against The Timken Company. Said complaint had had been previously filed and dismissed pursuant to Civ. R. 41(A)(1).
 {¶ 11} On July 23, 2003, Defendant-Appellee filed its Motion for Summary Judgment.
 {¶ 12} On September 9, 2003, the trial court granted Defendant-Appellee's Motion for Summary Judgment.
 {¶ 13} Thus, it is from this Judgment Entry that Appellant now appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 14} "I. Upon due consideration of the evidence presented, and being required to construe such most favorably for plaintiff, the trial court erred by finding that as a matter of law the elements necessary to prove an intentional tort action had not been established.
 {¶ 15} "II. Upon due consideration of the evidence presented, construing such most favorably for plaintiff, the trial court erred by finding that as a matter of law the defendant's conduct did not rise beyond the level of negligence or reckless and wanton disregard."
 {¶ 16} "Summary Judgment Standard"
 {¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 18} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 19} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 20} It is based upon this standard that we review appellant's assignments of error.
 I., II. {¶ 21} In both of Appellant's assignments of error, appellant contends that the trial court erred when it granted Appellee's Motion for Summary Judgment. We disagree.
 {¶ 22} The controlling test on employer intentional tort is set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus:
 {¶ 23} "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated:
 {¶ 24} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 {¶ 25} "(2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 {¶ 26} "(3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"
 {¶ 27} There is an extremely high burden of proof to establish an intentional tort of an employer. As stated by the Court in Fyffe: "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent." Id. at paragraph 2 of the syllabus.
 {¶ 28} The substantial certainty standard in an employer intentional tort cause of action is "a significantly higher standard than even gross negligence or wantonness." Zink v.Owens-Corning Fiberglas Corp. (1989), 65 Ohio App.3d 637. The mere knowledge and appreciation of a risk or hazard, something short of substantial certainty, is not intent.
 {¶ 29} Appellant, in support of his claim and in its opposition to Appellee's Motion for Summary Judgment, presented the following affidavits of fellow employees of the Timken Company's rolling mill:
 {¶ 30} Gerald Wright: stated that he had been present on previous occasion when some form of mechanical device or block was used to prevent movement of the pinch roll when someone was within the operating portion of the mill.
 {¶ 31} Mark F. Turner: stated that he had personally informed supervisory personnel of his concerns about the possible dangers of the lack of some kind of mechanical restraint and block and bleed valves on the scarfer.
 {¶ 32} Jim Newport: stated that on more than three occasions he had brought his concerns regarding the safety of the pinch rolls on the scarfer machine to the maintenance personnel. He stated that he requested a mechanical stop be installed.
 {¶ 33} Based upon the rule that the facts must be construed in favor of the non-moving party, these facts averred in these affidavits are accepted as true.
 {¶ 34} Despite these facts, there is no evidence to establish the second prong of the Fyffe test. Appellant had worked as an operator of this particular machine for eight years and was very knowledgeable about the scarfer. He testified that he never saw the valve malfunction nor knew of any instance when the valve had ever failed. (Himes Depo. At 38-39). Despite the lack of mechanical block on the scarfer machine, there had been no previous accidents on the scarfer. The record is devoid of any knowledge by the employer that having appellant clean the scarfer would result in "harm" to appellant with "substantial certainty." At best, appellee may have been negligent, however, negligence is not the test for an intentional tort.
 {¶ 35} Based upon the above, we conclude appellant failed to establish appellee had actual knowledge that injury to appellant was a substantial certainty as required by Fyffe, supra.
 {¶ 36} Due to our disposition of the second Fyffe
requirement, we find it unnecessary to address the first and third requirements.
 {¶ 37} Accordingly, appellant's assignments of error are overruled.
 {¶ 38} The judgment of the Stark County Court of Common Pleas is affirmed.
Boggins, J., Hoffman, P.J. and Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.