OPINION
{¶ 1} Appellant Anthony Taylor appeals the April 20, 2004, decision of the Stark County Court of Common Pleas which granted summary judgment on behalf of Appellees.
 {¶ 2} Appellees are the Blue Knights Motorcycle Club of Canton, Dennis Adams, Sr., Dennis Adams, Jr. and Ricky Adams.
 STATEMENT OF THE FACTS AND CASE {¶ 3} The following facts are pertinent to this appeal:
 {¶ 4} On December 3, 2000, Appellant Anthony Taylor was injured in a shooting incident which occurred at the Blue Knights Motorcycle Club. The Blue Knights Motorcycle Club is a non-profit organization that works as social/benevolent organization. The organization maintained a current liquor license and served alcohol on the premises. While at one time membership in the club had been extensive, such membership had diminished to the point where the only two active members were Dennis Adams, Sr. and Dennis Adams, Jr. It is undisputed that Appellant Anthony Taylor was not a member of the Club.
 {¶ 5} On the night in question, Appellant Taylor was asked to work as a doorman/bouncer at an event sponsored by the Blue Knights Motorcycle Club. His duties included collecting a cover charge from and frisking for weapons, those patrons who wanted to enter the Club. Appellant was given compensation for this work. At some point during the evening, one Dartanion Crider arrived at the club. Crider was frisked by Ricky Adams and was found to be carrying a firearm. The firearm was taken from Crider and placed in a cabinet behind the deejay booth, but he was allowed entry into the club. Later, a fight broke out in which Crider was involved. In said fight, Crider was beaten rater severely. In an attempt to stop the fight, Dennis Adams, Jr. fired a gunshot into the air and ordered everyone out of the building. Appellant Taylor saw Crider and Rocky Adams wrestling over Crider's firearm, which ultimately resulted in Crider being in possession of such firearm. Ricky Adams and Dennis Adams, Jr. attempted to escort Crider out of the premises, through the door where Appellant Taylor was standing. As Crider approached the door, and Appellant Taylor, Appellant Taylor raised his hands into the air, stating "I ain't got nothing to do with this.". (Depo. of Anthony Taylor at 69-72). Crider replied "Yes, you do mother f____", and shot Appellant. Id. Appellant Taylor is now a paraplegic as result of such gunshot injury.
 {¶ 6} Appellant Taylor filed a worker's compensation claim with regard to such gunshot injury which occurred on December 3, 2000. Said claim for benefits was denied at the administrative level.
 {¶ 7} On August 6, 2001, Appellant Taylor filed an appeal of the denial of his worker's compensation claim. The parties in this case reached a settlement and by entries dated June 17, 2002, and July 15, 2002, the trial court dismissed the case with prejudice based on such notification of settlement. Plaintiff signed a Settlement Agreement and Release on July 1, 2002.
 {¶ 8} On December 2, 2002, appellant filed a complaint against the Blue Knights Motor Cycle Club of Canton, Dennis Adams, Sr., Dennis Adams, Jr. and Ricky Adams alleging negligence, dram shop liability, employer intentional tort, piercing the corporate veil and punitive damages.
 {¶ 9} Auto-Owner's Mutual Insurance Company had in effect a commercial property coverage and commercial general liability policy for Blue Knights Motorcycle Club, Inc. with a policy period of October 8, 2000 to October 8, 2001. Auto-Owners intervened in this action seeking a declaratory judgment that it did not owe an obligation to provide benefits or any other coverage to Appellant Taylor as a result of the December 3, 2000, incident, nor a requirement to defend or indemnify Appellees.
 {¶ 10} On January 16, 2004, Appellees filed a Motion for Summary Judgment as to each of Appellant's claims, arguing inter alia, that Anthony Taylor should be judicially estopped from claiming that he is not an employee of the Blue Knights Motorcycle Club and that since he is an employee of the Club, he cannot assert claims of negligence and dram shop liability pursuant to R.C. § 4123.74.
 {¶ 11} The trial court, in a judgment entry filed on April 20, 2004, granted summary judgment in favor of Appellees.
 {¶ 12} Appellant timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 ASSIGNMENTS OF ERROR {¶ 13} "I. The lower court committed legal error by invoking judicial estoppel stating that plaintiff-appellant is barred from asserting that he was not an employee on december 3, 2000.
 {¶ 14} "II. The trial court ignored evidence and failed to construe evidence in a manner favorable to plaintiff.
 {¶ 15} "III. Defendants are not entitled to summary judgment on plaintiff's claim of employer intentional tort.
 {¶ 16} "IV. Plaintiff's claims for dram shop liability and piercing the corporate veil must be remanded to the trial court."
{¶ 17} SUMMARY JUDGMENT STANDARD
 {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 19} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
 {¶ 20} "A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 21} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, (1996), 75 Ohio St.3d 280.
 {¶ 22} It is based upon this standard that we review appellant's assignments of error.
 I. {¶ 23} Appellant in his first assignment of error argues that the trial court erred when it held that he was judicially estopped from arguing that he was not an employee of Blue Knight Motorcycle Club of Canton. We disagree.
 {¶ 24} Judicial estoppel occurs when a party has successfully advanced a position, under oath, in a judicial proceeding and then takes an inconsistent position in a subsequent proceeding. Smith v. Dillard Dept.Stores, Inc. (2000), 139 Ohio App.3d 525, 533, 744 N.E.2d 1198.
 {¶ 25} The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. Smith, supra, quoting TeledyneIndus., Inc. v. Natl. Labor Relations Bd. (C.A.6, 1990), 911 F.2d 1214,1217. The rationale of judicial estoppel is that "a party should not be allowed to convince one judicial body to adopt certain factual contentions and then subsequently unconscionably assert [to] another judicial body that these contentions were inaccurate and that a different set of facts should be found." Scioto Mem. Hosp. Assn., Inc. v. PriceWaterhouse Co. (Dec. 21, 1993), Franklin App. No. 90AP-1124.
 {¶ 26} The policy behind judicial estoppel is to "`preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" Smith at 533, 744 N.E.2d 1198, quoting Teledyne at 1218. The doctrine applies only if three factors are met. The party asserting judicial estoppel must prove that its adversary "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." Id.
 {¶ 27} In the case sub judice, the trial court found that Appellant was judicially estopped from claiming that he was not employee because he had taken the contrary position in Case NO. 2001CV02095 wherein he argued that he was an employee of the Appellees and was entitled to worker's compensation benefits for the injuries that he sustained as a result of his employment on December 3, 2000. The trial court found that Appellant testified in a prior sworn deposition that he was employee of Blue Knights and that such position was accepted by the trial court when the trial court entered its dismissal entry based on a settlement agreement entered into by the parties.
 {¶ 28} Upon review, we agree with the trial court that Appellant Taylor is judicially estopped from prosecuting any claims sounding in negligence against Appellees on the basis that he was not an employee, because in seeking his claim for workers' compensation benefits, his sworn statements are that he was an employee, which resulted in a settlement of $70,000.00. Additionally, Appellant Taylor executed a "Final Settlement Agreement and Release" which released any and all further claims against Blue Knights Motorcycle Club arising out of the injuries Appellant sustained on December 3, 2000. Specifically, the release states that the settlement was entered into "in full, complete and final satisfaction and settlement of the Ohio Workers' Compensation Claim No. 00-808803 and/or any other claim or claims which Plaintiff/Claimant might or could have filed . . . with or against the within named Defendant/Employer or any other employer."
 {¶ 29} In said Agreement/Release, the Blue Knights Motorcycle Club is designated as Defendant/Employer. While, Appellant is referred to as Plaintiff/Claimant, not "employee", to argue that he was not taking the position as an employee is elevating form over substance and engaging in the "cynical gamesmanship" warned of in Smith, supra. The Club cannot be an "employer" unless there is an "employee".
 {¶ 30} Appellant then argues that his $70,000.00 settlement does not constitute "success" for purposes of arguing his position in his earlier court case. Again, we find that by accepting the settlement, Appellant was successful in his position, regardless of the amount of money he received in settlement of his claim.
 {¶ 31} Appellant's first assignment of error is denied.
 II. {¶ 32} In the Second Assignment of Error, Appellant argues that the trial court erred by failing to construe the evidence in a manner favorable to Appellant. We disagree.
 {¶ 33} In its Entry, the trial court found:
 {¶ 34} "On December 3, 2000, Defendants asked Plaintiff to work as a doorman and bouncer at an event sponsored by the Blue Knights Motorcycle Club. Plaintiff received some compensation for his work.
 {¶ 35} "* * *
 {¶ 36} "Ricky Adams states that Crider got his gun back just as he was going to leave the Club, but then immediately came back into the building and shot Plaintiff."
 {¶ 37} Appellant argues that making the above findings, the trial court construed the facts most favorably to Appellees, the moving party, rather than Appellant.
 {¶ 38} Upon review, we find that the material findings made by the trial court were taken from Appellant's own testimony and version of the events. The statement made by Ricky Adams which the trial court included is not material to the trial court's ultimate disposition of Appellant's claims.
 {¶ 39} The issue of whether Crider shot Appellant as he was exiting the Club, or whether he walked out, then walked back in and shot Appellant is inconsequential as the trial court determined that this was not a negligence issue because Appellant was an employee of the club on the night in question.
 {¶ 40} We therefore find Appellant's second assignment of error not well-taken.
 {¶ 41} Appellant's second assignment of error is denied.
 III. {¶ 42} In his Third Assignment of Error, Appellant argues that the trial court erred in finding that Appellees were entitled to summary judgment on Appellant's claim of intentional tort. We disagree.
 {¶ 43} In order to avoid summary judgment, appellant must present evidence to establish all three of the elements required in an intentional tort claim against an employer. The Ohio Supreme Court has articulated these elements as:
 {¶ 44} (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 {¶ 45} (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 {¶ 46} (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Fyffe v. Jeno's (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 47} An employer intentional tort claim requires proof beyond that required to establish negligence or recklessness. Id., paragraph two of the syllabus. Mere knowledge and appreciation of a risk, something short of substantial certainty, is not intent; the intentional tort cause of action is limited to egregious cases. See Sanek v. Duracote, Inc.
(1989), 43 Ohio St.3d 169, 172.
 {¶ 48} The trial court in the case at bar stated that appellant failed to show that Appellees knew that it was a substantial certainty that Appellant Taylor would be injured by the shooter, Crider. The trial court found that Appellant failed to provide any evidence of prior violent incidents at the Club, or violent acts by Crider at the Club. Additionally, the trial court found that Appellant failed to provide Civ. R. 56 evidence to demonstrate a question of material fact that Appellees had actual knowledge that by permitting Crider's weapon onto the premises, and then later returning same, Crider would use the weapon to shoot Appellant Taylor. Accordingly, the trial court found that Appellees were entitled to judgment as a mater of law on Appellant's claim of employer intentional tort.
 {¶ 49} We have reviewed the record in this case, and find that all three prongs of the Fyffe test were not met. Like the trial court, we have not been directed to any evidence in the record that shows that Appellees knew that an injury to Appellant Taylor was substantially certain to occur. Appellant's own testimony was that no one expected Crider to shoot Appellant. (T. at 73-74).
 {¶ 50} Construing the evidence most favorably for appellant, reasonable minds could come to but one conclusion on the issue of Appellees' knowledge of a substantial certainty of injury, and that conclusion is adverse to appellant.
 {¶ 51} There was no evidence that Appellees had knowledge that if appellant worked at the door as a doorman/bouncer, that harm to appellant would be a substantial certainty.
 {¶ 52} As we previously noted, negligence or recklessness is not sufficient for an employer intentional tort. Fyffe, 59 Ohio St.3d at paragraph two of syllabus. In order to prove a substantial certainty of harm, appellant must show the level of risk-exposure was egregious.Sanek, 43 Ohio St.3d at 172.
 {¶ 53} Based upon our finding that appellant cannot meet the second prong of Fyffe to defeat summary judgment, it is not necessary that we address the other two parts of the intentional tort action. See, e.g.,Himes v. The Timken Co., Stark App. No. 2003CA00358, 2004-Ohio-4858, at ¶ 36; see Eubank v. Madison Township Trustees (Sept. 23, 1997), Franklin App. No. 96APE12-1693.
 {¶ 54} Appellant's third assignment of error is denied.
 IV. {¶ 55} In his Fourth Assignment of Error, Appellant argues that the trial court erred in finding that his claims for negligence and dram shop liability were moot and that such claims should be remanded to the trial court. We disagree.
 {¶ 56} The trial court, having found that Appellant was judicially estopped from asserting that he was not an employee, found that he was precluded from asserting claims for negligence and dram shop liability. (4/2/04 Judgment Entry at 5).
 {¶ 57} Having affirmed the trial court's decision on the issue of judicial estoppel, we likewise find that the trial court was correct in this determination.
 {¶ 58} Appellant's fourth assignment of error is denied.
 {¶ 59} Accordingly, for the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Boggins, P.J. Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to Appellant.